[No. S087880. July 2, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT LOUIS MARTIN, Defendant and Appellant.

## COUNSEL

Sharon M. Jones, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Kyle Niki Shaffer and Susan E. Miller, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BAXTER, J.**—In *People v. Mijares* (1971) 6 Cal.3d 415 [99 Cal.Rptr. 139, 491 P.2d 1115] (*Mijares*), this court held that, under limited circumstances, momentary or transitory possession of an unlawful narcotic for the sole purpose of disposing of it can constitute a defense to a charge of criminal possession of the controlled substance. (*Id.* at p. 419.) Nearly two decades later, the court in *People v. Cole* (1988) 202 Cal.App.3d 1439 [249 Cal.Rptr. 601] (*Cole*) read our decision in *Mijares* as holding that "possession of illegal drugs *solely for the purpose of disposal* does not constitute unlawful possession," and further concluded the defense "is not limited to possession for 'brief moments' only." (*Id.* at p. 1445, italics in original.)

To date, with the exception of one published decision that, in dicta, seemingly accepted the rationale and holding of *Cole* (see *People v. Spry* (1997) 58 Cal.App.4th 1345 [68 Cal.Rptr.2d 691]), every court that has considered the issue has rejected *Cole*'s expansive reading of *Mijares*'s transitory possession defense. We granted review to clarify the nature and scope of the affirmative defense of transitory possession for disposal first announced in *Mijares*. We conclude the rationale and holding of *Cole* misconstrues the defense as devised in *Mijares*, and that *Cole* should therefore be disapproved. Accordingly, the judgment of the Court of Appeal will be affirmed.

### Facts and Procedural History

On June 3, 1997, defendant Robert Louis Martin was living with his girlfriend, Janelle Davis, and her 19-year-old son, Guy Davis, in Hemet, California. Sometime in the late afternoon a family altercation commenced at the home during a visit by Janelle's nephew, Charles Trip, and his wife, Nicole Trip. Defendant returned home with his three young children shortly after Charles and Nicole arrived. According to Janelle, who testified for the

defense, when defendant entered the house she called him into the kitchen, handed him a small packet of white powder she had just discovered in Guy's room, which she suspected to be drugs, and asked defendant to "[g]et rid of it."[1] The two then returned to the living room and began arguing with the visitors.

The melee escalated. Guy Davis entered the argument and, according to his mother's testimony, hit defendant with a pipe, accidentally hitting her as well. Nicole Trip testified Guy was wielding a small "bat" and defendant had picked up a chair and was holding it over his head in a threatening manner. As the visitors and a neighbor, Kenneth Biggs, became involved in the fracas, defendant yelled for everyone to get out of the house. Defendant's children ran from the house, and most of the adults also exited, including defendant. Ultimately, defendant wound up outside in the alley behind the house, facing a group of adults comprised of family members and neighbors as he screamed and swung a metal pipe around himself in an arc, as one would swing a baseball bat. Defendant also picked up and threw rocks at the group, hitting a neighbor, Naomi Biggs, in the leg. Nicole Trip testified that as she tried to go past defendant to enter the house to call police,[2] defendant stepped in her direction and took a "full swing" at her with the pipe. She "jump[ed] back" and the pipe missed her by three or four feet. Defendant did not actually hit anyone with the pipe during the episode.

Police officers Randy Jahn and Scott Jernagan arrived on the scene at 7:00 p.m. They found defendant and a neighbor, Kenneth Biggs, in a fighting stance with others standing around. A three-foot length of pipe was recovered from the ground six inches from where defendant was standing. After questioning defendant and the others at the scene for approximately 30 minutes, Officer Jahn handcuffed defendant and took him into custody, and Officer Jernagan transported him to the Hemet police station. At the station Officer Jernagan searched defendant's pants pockets and discovered a "bindle" containing .12 grams of methamphetamine. When Officer Jahn questioned defendant about the methamphetamine, he responded, "I don't know how I got it, and it's not mine. I don't know how it got there."

Defendant was charged with two felonies and two misdemeanors: assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)[3] [swinging the pipe at victim Nicole Trip]); possession of methamphetamine (Health & Saf. Code,

---

[1]Janelle Davis testified that she herself had used cocaine and methamphetamine in the past, had on one occasion been stopped by the police on suspicion of being under the influence of methamphetamine, and had lied to them to stay out of trouble.

[2]There was also evidence that defendant himself, at Janelle's request, had called the police when the argument first erupted.

[3]All further statutory references are to this code unless otherwise indicated.

§ 11377, subd. (a)); misdemeanor battery (§ 242 [(hitting Naomi Biggs with rocks]); and misdemeanor fighting in public (§ 415, subd. (1)). The amended information further alleged defendant had not remained free of convictions for five years after serving a prison term (§ 667.5, subd. (b)) and had previously been convicted of three serious and violent felonies. (§§ 667, subds. (c) & (e), 1170.12, subd. (c).) Defendant pled not guilty and denied all enhancement allegations. The misdemeanor charge of fighting in public was dismissed pursuant to section 1385 prior to the start of trial.

Defendant was found guilty by a jury of the three remaining charges. In the second bifurcated phase of trial, the court found all the enhancement allegations true. Thereafter, at sentencing, the court expressly declined to exercise discretion under section 1385 to strike any of the prior convictions. Defendant was sentenced to four terms: two concurrent prison terms of 25 years to life, one for each of the felony convictions; one concurrent term of six months in county jail for the misdemeanor battery conviction; and a one-year consecutive prison term for not having remained free of imprisonment or felony convictions for five years.

The Court of Appeal reversed defendant's conviction of assault with a deadly weapon for insufficiency of evidence and vacated the 25-year-to-life indeterminate term for that offense. It rejected his claim that the trial court erred in refusing to give a defense-requested version of CALJIC No. 12.06 pertaining to the possession of methamphetamine charge (the standard version was given) and affirmed the judgment and sentence in all other respects.

### Discussion

The essential elements of unlawful possession of a controlled substance are "dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character. Each of these elements may be established circumstantially." (*People v. Camp* (1980) 104 Cal.App.3d 244, 247-248 [163 Cal.Rptr. 510]; see *People v. Palaschak* (1995) 9 Cal.4th 1236, 1241-1242 [40 Cal.Rptr.2d 722, 893 P.2d 717].) It has been observed that the statute proscribing the unlawful possession of controlled substances (Health & Saf., Code, § 11377, subd. (a); see also Health and Saf. Code, § 11350, former § 11500, Stats. 1970, ch. 1098, § 1, p. 1945, repealed by Stats. 1972, ch. 1407, § 2, p. 2987) "makes possession illegal without regard to the specific intent in possessing the substance." (*People v. Sullivan* (1989) 215 Cal.App.3d 1446, 1452 [264 Cal.Rptr. 284] (*Sullivan*).) Although the possessor's knowledge of the presence of the controlled substance and its nature

as a restricted dangerous drug must be shown, no further showing of a subjective mental state is required. (*Ibid.*)[4]

Intent to possess the controlled substance for a minimally prescribed period of time has never been an element of the statutes criminalizing simple possession. Nonetheless, in *Mijares, supra,* 6 Cal.3d at pages 420-422, we held that, under limited circumstances, facts showing only a "brief," "transitory" or "momentary" possession could constitute a complete defense to the crime.[5]

In *Mijares* the principal question presented was whether the act of momentarily handling a narcotic for the sole purpose of disposal constituted unlawful "possession" within the meaning of Health and Safety Code former section 11500. Defendant Mijares was observed by a woman bystander as he leaned inside a parked car and slapped the passenger (his friend) across the face. Moments later he was seen removing an object from the passenger compartment of the car, which he threw into a nearby field. He then drove his friend, who was suffering from a heroin overdose, to a fire station. The friend, who was not breathing, was revived and taken away by ambulance while Mijares waited at the station for the police. The authorities recovered the object tossed into the field and determined it contained heroin and related paraphernalia, whereupon Mijares was arrested for possession of narcotics. At trial Mijares claimed he believed his friend was overdosing and needed medical help. Suspecting the friend might still have narcotics on his person if he had recently taken drugs, Mijares looked inside the friend's pockets, found the narcotics outfit, and threw it out of the car before driving to the fire station for help. (*Mijares, supra,* 6 Cal.3d at pp. 417-419.)

We explained in *Mijares* that "in throwing the heroin out of the car, defendant Mijares maintained momentary possession for the sole purpose of

---

[4]As explained more fully below, this passage in *Sullivan* merely acknowledges that there is no specific intent required for the crime of simple possession of controlled substances. Transitory possession coupled with intent to dispose of the contraband can, however, serve to establish the affirmative defense of transitory possession for purposes of disposal.

[5]The *Mijares* theory has been alternately described as the "temporary possession defense," the "momentary possession defense," the "transitory possession defense," and the "disposal defense." (*People v. Frazier* (1998) 63 Cal.App.4th 1307, 1310 [74 Cal.Rptr.2d 627]; *People v. Spry, supra,* 58 Cal.App.4th at p. 1363; *People v. Hurtado* (1996) 47 Cal.App.4th 805, 810, 814 [54 Cal.Rptr.2d 853]; *People v. Pepper* (1996) 41 Cal.App.4th 1029, 1038 [48 Cal.Rptr.2d 877]; *Sullivan, supra,* 215 Cal.App.3d at p. 1453.) In *Mijares* we carefully "emphasize[d] that our decision in no way insulates from prosecution under the narcotics laws those individuals who, fearing they are about to be apprehended, remove contraband from their immediate possession. [Citations.] We leave intact the rule that from such conduct 'it could be inferred that defendant at one time exercised physical dominion' over the narcotic. [Citation.] Furthermore, certain actions relating to abandonment of narcotics may also fall within the proscription of section 135 of the Penal Code, forbidding the destruction or concealment of evidence." (*Mijares, supra,* 6 Cal.3d at p. 422.)

putting an end to the unlawful possession of [his friend]." (*Mijares, supra*, 6 Cal.3d at p. 420.) We concluded that the physical control inherent "during the brief moment involved in abandoning the narcotic" was not possession for purposes of the statute. (*Id.*, at p. 422.) We reasoned that if such transitory control were to constitute possession, "manifest injustice to admittedly innocent individuals" could result. (*Ibid.*) As an example, we referred to the witness who saw the defendant throw the object. Had she "briefly picked up the package and identified the substance as heroin and then placed the outfit back on the ground, during the time after which she had realized its narcotic character she, too, would have been guilty of possession under an unduly strict reading of [the statute], notwithstanding the fact that her transitory handling of the contraband might have been motivated solely by curiosity." (*Ibid.*) We refused to "read the possession statutes to authorize convictions under such guileless circumstances." (*Ibid.*) We further relied on certain federal court decisions that had rejected the notion that criminal possession under federal statutes includes such transitory activity as the momentary handling of drugs. We noted that the Seventh Circuit Court of Appeals had reversed a federal narcotics conviction, declaring, " ' "To 'possess' means to have actual control, care and management of, and not a passing control, fleeting and shadowy in its nature." ' " (*Mijares, supra*, 6 Cal.3d at p. 420, quoting *United States v. Landry* (7th Cir. 1958) 257 F.2d 425, 431.)[6]

Our decision in *Mijares* gave rise to the initial version of CALJIC No. 12.06, entitled Momentary Possession as Not Unlawful.[7] Nearly two decades later, the court in *Cole, supra*, 202 Cal.App.3d 1439, concluded the core holding of our decision in *Mijares* was that "possession of illegal drugs *solely for the purpose of disposal* does not constitute unlawful possession," and that the defense recognized in *Mijares* "is not limited to possession for

---

[6]We also found support for defendant Mijares's position in a Prohibition era case, *Garland v. State* (1933) 165 Miss. 136 [146 So. 637], in which the Mississippi Supreme Court declared that a wife who had been arrested for throwing out a jug of illegal alcohol had possessed it for the sole purpose of putting an end to the unlawful possession of the liquor by her husband. Paraphrasing *Garland*, we observed that "in throwing the heroin out of the car, defendant Mijares maintained momentary possession for the sole purpose of putting an end to the unlawful possession of [his passenger]" (*Mijares, supra*, 6 Cal.3d at p. 420), and that Mijares's jury therefore should have been instructed that the possession prohibited by Health and Safety Code former section 11500 "does not include mere[] handling for only brief moments prior to abandoning the narcotic." (*Mijares*, at p. 423.)

[7]The instruction provided that possession of an item is not unlawful where (1) possession is "momentary" and "based on neither ownership nor the right to exercise control over" the item; (2) the item is "possessed in furtherance of its abandonment or destruction"; (3) the item is possessed "for the purpose of terminating the unlawful possession of it by another person or preventing another person from acquiring possession of it"; and (4) "control is not exercised over the [item] for the purpose of preventing its imminent seizure by law enforcement." (CALJIC No. 12.06 (5th ed. 1988).)

'brief moments' only." (*Id.* at p. 1445.) Defendant Cole claimed he had seized cocaine from his teenage daughter and placed it in his safe while he and his wife decided how to dispose of it. The cocaine was found in the safe by police the following day during a search pursuant to a warrant. (*Id.* at p. 1442.) The *Cole* court concluded the trial court had erred in defining constructive possession for the jury (CALJIC No. 12.00) followed by an instruction based on *Mijares* because the jury might have accepted Cole's claim—that he had only "momentarily handled the cocaine for purposes of disposal or abandonment"—but nevertheless felt it had to convict him because the drugs remained "in his constructive possession in the safe for more than 'brief moments.' . . ." (202 Cal.App.3d at p. 1445.)

The *Cole* court opined that trial courts had a duty to correct CALJIC No. 12.06 either by deleting the "only brief moments" language or by further instructing that the length of time a defendant had the narcotics in his actual or constructive possession was only one factor in the jury's determination of whether possession was unlawful. (*Cole, supra,* 202 Cal.App.3d at p. 1446.) The court held: "For guidance on retrial, we suggest the instruction could be tailored as follows: If the defendant physically controlled the substance solely for the purpose of its disposal, such possession would not be unlawful even though he knew its nature as a controlled substance. Length of time of possession is one of the factors which may be considered when deciding whether the defendant physically handled the substance solely for disposal." (*Id.* at pp. 1446-1447.)

Accordingly, CALJIC No. 12.06 was revised in the wake of *Cole*. The instruction was renamed Possession—Not Unlawful, reference to "momentary possession" was deleted, and a paragraph was added pursuant to the suggested language in *Cole* stating that, "Length of time of possession is one of the factors that may be considered in deciding whether the defendant physically handled the substance solely for abandonment, disposal, or destruction." (CALJIC No. 12.06 (1989 rev.) (5th ed. 1988).)

The Comment to the 1989 version of CALJIC No. 12.06 advises that the revision is based on *Cole*'s conclusion that "while *People v. Mijares* factually only involved a momentary handling, . . . the critical issue was not the length of time of the handling but whether the defendant physically handled the substance solely for the purpose of disposal." (Com. to CALJIC No. 12.06 (1989 rev.) (5th ed. 1988) p. 8.) However, the Use Note to the 1989 version of the instruction (added in 1991) further advises that "[i]n *People v. Sullivan*[, *supra*,] 215 Cal.App.3d 1446, . . . the court took issue with [*Cole*], and concluded that decision unreasonably extended the *Mijares* rule." (Use Note to CALJIC No. 12.06 (1989 rev.) (5th ed. pocket pt.) p. 8.) The

Use Note then explains that "[a]s a result, there is a split in appellate authority and the trial court must choose between CALJIC 12.06, as found in the bound volume, and the 1989 revision, which is based upon the Cole case." (*Ibid.*)

As reported in the Use Note, within one year after *Cole* was decided the court in *Sullivan, supra,* 215 Cal.App.3d 1446, disagreed with *Cole*'s expansive reading of the *Mijares* defense. The defendant in *Sullivan* was stopped for Vehicle Code violations, whereupon it was quickly discovered that his Land Cruiser contained chemicals, a gram scale, plastic baggies and other items commonly associated with the manufacture of methamphetamine. He was searched and found in possession of a quantity of methamphetamine. The police proceeded to Sullivan's house and searched a locked shed in which they found more chemicals and paraphernalia associated with methamphetamine labs. Sullivan's defense was that all the chemicals, paraphernalia and quantities of methamphetamine belonged to a person who rented the shed behind his house. Since he (Sullivan) was on probation for a drug offense, he was afraid to call the police. Knowing the methamphetamine materials were dangerous, and fearful for his children, Sullivan loaded them into his Land Cruiser and was heading to an industrial park to dispose of them in a dumpster when he was stopped by police a quarter-mile from his house. (*Sullivan,* at pp. 1448-1450.)

Sullivan contended on appeal that the trial court had erred in refusing his requested instruction, purportedly derived from the holding of *Mijares,* that " 'Limited handling of contraband, such as for the purpose of abandonment, will not support a conviction for possession.' " (*Sullivan, supra,* 215 Cal.App.3d at p. 1450.) The trial court had rejected the requested instruction because the facts did not indicate a "fleeting possession" such as occurred in *Mijares.* (*Sullivan,* at p. 1452.) Sullivan therefore sought to invoke the holding of *Cole, supra,* 202 Cal.App.3d 1439, which, he urged, held that "fleeting possession" was not a necessary prerequisite for the *Mijares* instruction. (*Sullivan, supra,* 215 Cal.App.3d at p. 1452.)

The *Sullivan* court disagreed, reasoning as follows: "The *Mijares* decision was premised on the fleeting nature of the possession. *Cole* has read the fleeting nature of the possession out of the *Mijares* formula and expanded the scope of the defense. [¶] We think the *Cole* court, by abandoning the requirement the possession be 'fleeting,' has unreasonably expanded the *Mijares* rule. *Mijares*'s rule arose from a situation involving a fleeting, de minimis possession and a reflexive act of abandonment. The Supreme Court's holding was that this de minimis possession and reflexive response was not a criminal possession[.] [T]his rule is one which is an understandable and simple rule. *Cole* complicates the rule by bringing in inquiries into

the defendant's subjective intent in possessing the contraband. These inquiries are not suggested by *Mijares* or supported by the language of the statute. *Mijares*'s focus was on the fleeting nature of the possession (during the instant of abandonment), not on the subjective mental state of the defendant. The statute makes possession illegal without regard to the specific intent in possessing the substance. We conclude the *Cole* court misinterpreted the *Mijares* decision and erred in deleting the 'momentary' possession requirement. We therefore decline to follow *Cole*, preferring instead to apply pure *Mijares*." (*Sullivan, supra,* 215 Cal.App.3d at p. 1452.)[8]

More recently, the court in *People v. Frazier, supra,* 63 Cal.App.4th 1307 (*Frazier*) likewise rejected the rationale and holding of *Cole* and chose instead to follow *Sullivan*. A parole search was conducted in defendant Frazier's home in the presence of his wife, leading to the discovery and seizure of quantities of methamphetamine and related paraphernalia in their bedroom. Frazier's wife testified the defendant's brother had brought the narcotics into the home. The defendant testified that after his brother's visit the previous day he found methamphetamine on the dining room table, assumed the drugs belonged to his brother, and handed the drugs to his wife, telling her to get rid of them. He did not check to see whether she disposed of the drugs as instructed, nor could he explain how the drugs ended up in his bedroom. (*Id.* at p. 1309.) On those facts, Frazier contended the trial court had a duty to instruct the jury sua sponte with CALJIC No. 12.06 regarding the defense of transitory possession. (*Frazier,* at p. 1310.) The *Frazier* court disagreed. (*Ibid.*)

The *Frazier* court quoted with approval *Sullivan*'s discussion rejecting the rationale of *Cole*. (*Frazier, supra,* 63 Cal.App.4th at p. 1311.) The court then explained: "In this case, the evidence shows that defendant found methamphetamine in his house the night before his house was searched. According to his own testimony, defendant gave the drugs and smoking pipe to his wife

---

[8]The *Sullivan* court went on to explain why the facts before it did not show a "fleeting handling of contraband" for the purpose of destroying or abandoning it: "Here, Sullivan's own version of the facts show he made a conscious decision to exercise control and dominion over the methamphetamine for an extended period of time. He did not take merely momentary possession of the methamphetamine while disposing of it, e.g., his possession was not limited to handling the methamphetamine for the few moments it would take to carry it into the house and flush it down the toilet. Instead, Sullivan, as shown by his version of the facts, elected to remove the methamphetamine from the shed and place it in the front seat of his truck, separate from the chemicals and equipment. Later, when stopped by the deputy, Sullivan did not attempt to turn the methamphetamine over to the police but moved the methamphetamine from the front seat of the truck to his pocket to conceal it from the deputy and to retain possession of it. This evidence did not justify Sullivan's requested *Mijares* instruction since the instruction applies only where there is a brief handling of the contraband while disposing of it." (*Sullivan, supra,* 215 Cal.App.3d at p. 1453.)

and told her to get rid of them. However, a baggie containing methamphetamine was found by the investigating officers several hours later sitting in plain view upon the headboard of defendant's bed. Moreover, another bag of methamphetamine was found on a shelf in the closet of defendant's bedroom. [¶] Therefore, defendant's possession, which was neither fleeting nor personally for the purpose of abandonment, disposal, or destruction, does not meet the requirements of the *Mijares* rule. Defendant's lengthy possession of the contraband denied him the right to a momentary possession instruction despite his stated intent to get rid of the drugs. Accordingly, the trial court did not err by failing to give sua sponte the momentary possession instruction derived from *Mijares*." (*Id.* at p. 1312.)

*Frazier* also placed reliance on *People v. Hurtado, supra,* 47 Cal.App.4th 805 (*Hurtado*), which case similarly rejected the rationale and holding of *Cole* in construing an arguably analogous unlawful possession statute. "*Hurtado* adopted the *Sullivan* rationale in a case involving illegal possession of a firearm by a convicted felon. (§ 12021, subd. (a).) There, the son of defendant's girlfriend gave him a loaded weapon the boy had found lying on the ground. Defendant intended to get rid of the gun but still had it in his possession three days later when he was stopped for a traffic violation. ([*Hurtado;*] *supra,* 47 Cal.App.4th at pp. 808-809.) The *Hurtado* court unequivocally sided with *Sullivan.* 'Like the trial court in this case, we also find the *Sullivan* analysis persuasive. Recognition of the "momentary possession" defense serves the purpose of encouraging disposal and discouraging retention of dangerous items such as controlled substances and firearms. However, expansion of the defense to lengthier possession incidental to a defendant's "intent" to dispose of those items rewrites the statutory requirements by introducing a new element of "specific intent to retain." We are not authorized to so revise the Legislature's description of a criminal offense. Therefore, in a case in which a defendant is entitled to an instruction on temporary possession for disposal, we conclude the trial court should instruct pursuant to the original version of CALJIC No. 12.06 based upon *Mijares.*' ([*Hurtado,*] *supra,* 47 Cal.App.4th at p. 814; see also *People v. Pepper[, supra,]* 41 Cal.App.4th 1029, 1036-1038 . . . , ruling the momentary possession defense does not apply to a violation of section 12021 except when the firearm is possesed momentarily in self-defense, in defense of others, or as a result of legal necessity.)" (*Frazier, supra,* 63 Cal.App.4th at p. 1312.)

■ We agree with the decisions in *Sullivan, Frazier* and *Hurtado* that reject *Cole*'s expansive reading of our opinion in *Mijares.* As noted, the statutes (past and present) at issue in the cases we have reviewed all make unlawful the possession of enumerated controlled substances "without regard to the [possessor's] specific intent in possessing the substance." (*Sullivan, supra,* 215 Cal.App.3d at p. 1452 [but see *ante,* fn. 4, p. 1185].) As aptly

explained in *People v. Spry, supra,* 58 Cal.App.4th at page 1369, "When a defendant relies on the *Mijares* defense, he or she essentially admits the commission of the offense of simple possession of narcotics: The defendant exercised control over the narcotics, he or she knew of its nature and presence, and possessed a usable amount. (CALJIC No. 12.00.) However, the defendant additionally asserts that he or she possessed the narcotics for the limited purpose of disposal, abandonment, or destruction. *Mijares* does not serve to negate an element of the offense of possession of narcotics. Instead, it offers a judicially created exception of lawful possession under certain specific circumstances as a matter of public policy, similar to the defenses of entrapment and necessity."

We agree with the *Hurtado* court that recognition of a "momentary possession" defense serves the salutary purpose and sound public policy of encouraging disposal and discouraging retention of dangerous items such as controlled substances and firearms. (*Hurtado, supra,* 47 Cal.App.4th at p. 814.) The theory of defense to unlawful possession of narcotics announced in *Mijares* "arose from a situation involving a fleeting, de minimis possession and a reflexive act of abandonment. [Our] holding was that this de minimis possession and reflexive response was not a criminal possession." (*Sullivan, supra,* 215 Cal.App.3d at p. 1452.) Throughout our opinion we repeatedly focused on the fleeting and transitory nature of Mijares's possession of his passenger's "narcotics outfit" during the instant he removed it from the latter's person and threw it into the nearby field. (*Mijares, supra,* 6 Cal.3d at pp. 419 ["momentary 'possession' of the heroin," "transitory activity"], 422 ["brief moment involved in abandoning the narcotic," "transitory handling of the contraband"], 423 ["momentary handling prior to abandonment," "merely handling for only brief moments prior to abandoning the narcotic"].) We concluded in *Mijares* that such momentary or transitory handling or possession, coupled with intent to dispose, could establish a defense to the crime of unlawful possession of narcotics. The *Hurtado* court correctly observed that *Cole*'s expansion of the momentary possession defense to lengthier possession incidental to the defendant's intent to dispose of controlled substances effectively rewrites the statutory requirements of unlawful possession by introducing a new element of " 'specific intent to retain.' " (*Hurtado, supra,* 47 Cal.App.4th at p. 814.)[9]

We conclude that the defense of transitory possession devised in *Mijares* applies only to momentary or transitory possession of contraband for the purpose of disposal, and that the trial court did not err in refusing

---

[9] We reiterate: although there is no such specific intent element in the crime of simple possession of controlled substances, brief or transitory possession of narcotics *with the intent to dispose of the contraband* can establish the *Mijares* defense of transitory possession.

defendant's requested instruction based on the holding in *Cole*. To the extent *People v. Cole, supra,* 202 Cal.App.3d 1439, and *People v. Spry, supra,* 58 Cal.App.4th 1345,[10] are inconsistent with the views expressed herein, they are disapproved.

Returning to the facts of this case, even assuming arguendo the jury fully credited Janelle Davis's testimony that she found the methamphetamine bindle in her son Guy's room and handed it over to defendant with a request that he dispose of it, defendant was still not entitled to even the pre-*Cole* version of the *Mijares* transitory possession instruction that he received. The Court of Appeal concluded as much as four hours had elapsed between the time Davis first gave the narcotics to defendant (when he first returned to the home at approximately 3:00 p.m., 20 minutes after the Tripps had arrived) and the time of the arrival of the officers on the scene of the altercation at 7:00 p.m. Defendant vigorously contested the Court of Appeal's conclusion that the time of possession was as long as four hours. We agree that the testimony in the record upon which that conclusion was based is equivocal. We note, however, that at the instruction-settling conference, defense counsel conceded the relevant time of possession was "not a fleeting

---

[10]In *Spry*, the defendant was charged with possession of heroin and asserted he possessed the narcotics for the limited purpose of disposal. The jury was instructed pursuant to the post-*Cole* version of CALJIC No. 12.06 and the defendant convicted as charged. (*Spry, supra,* 58 Cal.App.4th at pp. 1348, 1357.) On appeal he contended the standard instruction failed to define the allocation and magnitude of the burden of proving the defense. (*Id.* at p. 1348.) The Court of Appeal agreed, holding that *the defendant* bears the burden of establishing the *Mijares* affirmative defense of possession for the purpose of disposal by a preponderance of the evidence. (*Id.* at p. 1369.)

Interestingly, the *Spry* court nonetheless found the instructional error prejudicial and reversed. (*Spry, supra,* 58 Cal.App.4th at pp. 1371-1372.) Accordingly, the court did not have occasion to directly consider the simmering controversy between *Cole*, on the one hand, and *Sullivan* and *Hurtado* on the other (*Frazier* was decided after *Spry*) on the nature and scope of the elements of the *Mijares* momentary possession defense. In dicta, however, the *Spry* court did briefly discuss *Cole* and *Sullivan*, and seemingly accepted *Cole*'s expansive treatment of the defense. (*Spry, supra,* 58 Cal.App.4th at pp. 1363, 1367.) But the discussion is confusing, for although the court acknowledged that Spry's jury was instructed with the post-*Cole* version of CALJIC No. 12.06 (58 Cal.App.4th at pp. 1363-1364), elsewhere in its opinion the court wrote: "CALJIC No. 12.06 correctly states the elements of the *Mijares* defense of lawful possession of narcotics: *The defendant's possession must be momentary*; the narcotics must be possessed solely for the purpose of abandonment, disposal, or destruction; the narcotics must be possessed for the purpose of terminating another person's unlawful possession; and control is not exercised over the narcotics to prevent their imminent seizure by law enforcement. The instruction also contains *Cole*'s expansive language concerning length of time of possession as another variable factor. [¶] The instruction additionally provides possession of a controlled substance is not unlawful where all four stated conditions 'are met.' " (*Spry,* at pp. 1369-1370, italics added.) Although *Spry* is thus good authority for the proposition directly considered therein—the allocation of the burden of proof under the *Mijares* affirmative defense instruction—a close reading of the opinion only adds to the confusion concerning whether momentary possession is an element of the *Mijares* defense.

instantaneous possession, such as in *Sullivan.*"[11] In any event, according to the officers' testimony, an additional 30 minutes elapsed between the time they arrived and questioned defendant and others, and the time defendant was placed under arrest. At least another 10 minutes elapsed from the time defendant was arrested and transported to the police station until the point he was searched, leading to discovery of the narcotics in his pants pocket. There is no indication in the record that during these periods defendant made any attempt, or took any physical action, to dispose of the methamphetamine bindle, much less enlist the assistance of the officers in doing so. Indeed, there is nothing in the record from which to infer that defendant would have voluntarily relinquished possession of the drugs were it not for the search conducted incident to his arrest and booking that led to recovery of the methamphetamine bindle. On these facts, defendant was not entitled to a *Mijares* instruction on transitory possession for the purpose of disposal.

### Conclusion

The judgment of the Court of Appeal is affirmed.

George, C. J., Werdegar, J., Chin, J., and Brown, J., concurred.

**KENNARD, J.**—I concur in the result.

In *People v. Mijares* (1971) 6 Cal.3d 415 [99 Cal.Rptr. 139, 491 P.2d 1115], this court held that momentary handling of a controlled substance for the sole purpose of disposal is not possession. (*Id.* at pp. 420-422.) Although the majority repeatedly states that in *Mijares* this court held that momentary handling of a controlled substance is a "defense" to a charge of possessing that substance (maj. opn., *ante,* at pp. 1182, 1185, 1186, 1190-1192), this court did not there create or recognize any affirmative defense to such a charge. Rather, this court in *Mijares* simply noted that the issue of momentary handling "goes to the very essence of the offense." (6 Cal.3d at p. 423.) Thus, unlike the majority, I would reaffirm *Mijares* without modification.

---

[11]In oral argument before this court, appellate counsel likewise acknowledged that as far as *Mijares*'s brief or momentary time requirement, the facts of this case do not meet the *Mijares* test. Appellate counsel urged that we instead follow *Cole* and conclude "it all boils down to an issue of intent."