Filed 7/29/13  In re F.R. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re F.R., a Person Coming Under the Juvenile Court Law. | B244701 <br><br> (Los Angeles County <br> Super. Ct. No. MJ21219) |
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> F.R., <br><br>     Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Akemi Arakaki, Judge.  Reversed.

Bruce G. Finebaum, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, and Paul M. Roadarmel, Jr., Deputy Attorney General, for Plaintiff and Respondent.

F.R. was declared a ward of the juvenile court after the court sustained a petition alleging a single count of possession of a controlled substance, dihydrocodeinone (Health & Saf. Code, § 11350, subd. (a)).[1] On appeal F.R. contends there was insufficient evidence he knew the pills in his pocket were a controlled substance, a necessary element of the offense. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Incident*

On December 15, 2011 two Palmdale High School teachers directed school security guard Michael Rigby to an area where they said two students were smoking marijuana. F.R., then 16 years old, was one of the students. When Rigby walked over, he smelled marijuana but apparently did not observe either student actually smoking it or any other evidence of its presence at the scene. Rigby searched F.R. and found several pills in his left front pants pocket. Rigby gave the pills to Los Angeles County Deputy Sheriff Chad Hornig, who was assigned to Palmdale High School. After Hornig received the pills, he arrested F.R. for possession of a controlled substance.

One of the pills was white and oblong shaped and had the marking "M360" on it. The other pills had the marking "9358"; their shape was never described. Deputy Hornig sent the pills to the poison control office for identification. Senior Criminalist Hector Juarez examined three pills and found they had markings indicating they contained dihydrocodeinone; one was tested and found to contain dihydrocodeinone, also known as hydrocodone.[2]

---

[1]     Statutory references are to the Health and Safety Code unless otherwise indicated.

[2]     The minute order from the jurisdiction hearing states F.R.'s counsel stipulated Juarez analyzed the tablets and determined they contained dihydrocodeinone although the reporter's transcript of the oral stipulation identifies the substance phonetically as "hydrocodinine." Dihydrocodeinone is also known as hydrocodone. (National Center for Biotechnology Information, PubChem Substance, Dihydrocodeinone – Substance Summary at <https://www.google.com/search?q=ncbi&rls=com.microsoft:en-us&ie=UTF-8&oe=UTF-8&startIndex=&startPage=1&rlz=1I7ADFA_enUS479> [as of July 29, 2013].) According to the United States Drug Enforcement Administration

2. *The Jurisdiction Hearing*

The District Attorney filed a petition on February 16, 2012 pursuant to Welfare and Institutions Code section 602 alleging F.R. had committed one felony count of possession of a controlled substance (§ 11350, subd. (a)).[3] At the jurisdiction hearing on October 3, 2012 Rigby and Deputy Hornig described the detention and search of F.R. and the recovery of the pills from his pocket. Rigby testified he found "some pills"; he did not specify the number or describe them and did not recall whether the pills were loose or in a prescription bottle.[4] Hornig testified he had worked as a deputy sheriff for 20 years and had narcotics training "on and off" and had had contact with thousands of controlled substances. He testified Rigby gave him "several pills, different kinds," but described only two types—one marked "M360" and the others marked "9358." He did not identify any other distinctive aspect of the pills.

F.R. did not testify in his own defense, and his counsel called no other witnesses.

At the close of the People's case, F.R.'s counsel moved to dismiss the petition pursuant to Welfare and Institutions Code section 701.1 based on the People's failure to

website, "Hydrocodone is the most frequently prescribed opioid in the United States and is associated with more drug abuse and diversion than any other licit or illicit opioid." (Drug Enforcement Administration, Drug Fact Sheet, Hydrocodone, at <http://www.justice.gov/dea/druginfo/drug_data_sheets/Hydrocodone.pdfin> [as of July 29, 2013].) Two well-known prescription brand versions of hydrocodone in combination with acetaminophen are Vicodin and Lortab. (*Ibid.*)

[3] Section 11350, subdivision (a), provides in part, "Except as otherwise provided in this division, every person who possesses (1) any controlled substance specified in . . . subdivision (b) or (c) of Section 11055, . . . unless upon the written prescription of a physician, dentist, podiatrist, or veterinarian licensed to practice in this state, shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code." Section 11055, subdivision (b), in turn, identifies as a schedule II controlled substance 15 specific opiates, including hydrocodone (§ 11055, subd. (b)(1)(I)), as well as any salt, compound, isomer or derivative of those substances, whether natural or synthetic. (§ 11055, subd. (b)(2).)

[4] Notwithstanding Rigby's uncertainty on this point, during the proceedings the People stated the pills were loose, not in a bottle. There was no evidence the pills had been medically prescribed for F.R.

prove F.R. knew the pills contained a controlled substance, one of the elements of a violation of section 11350, subdivision (a). The court denied the motion and then, after hearing argument, sustained the petition, explaining, "[T]here is the knowledge requirement, but the court can take into consideration all of the surrounding circumstances including the markings on the—on the items, the way they were packaged. The court can take—can and should take into consideration all of the surrounding circumstances with regard to the detention. And based on the circumstances, the court does believe beyond a reasonable doubt that the minor did have knowledge of the narcotic nature of the items."[5]

3. *Disposition*

After sustaining the petition, the court declared F.R. a ward of the court and placed him home on probation for six months. The court also ordered F.R. to perform 40 hours of community service, pay restitution, submit to drug testing and complete counseling.

**DISCUSSION**

1. *Standard of Review*

The same standard governs review of the sufficiency of evidence in juvenile cases as in adult criminal cases: "[W]e review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light

---

[5] Before taking a short break to review relevant case law, the court had commented, "The minor clearly was in possession of these items; they had separate markings; there were multiple types of pills. He's a high school student. And it's pretty clear this is an item that—it's not like its candy. . . . It wasn't like something that he could have gotten not knowing essentially what the items—not necessarily not—he didn't have to necessarily know exactly what they were, meaning he doesn't need to know what their clinical name is, he doesn't even need to know what they do, and knowing that they were a controlled substance is, I believe, sufficient with regard to the elements that needs to be proved by the People."

most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357; see *In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.)

    2. *There Is Insufficient Evidence To Support a Finding F.R. Knew the Pills Contained a Controlled or Restricted Substance*

To establish F.R. violated section 11350, subdivision (a), the People were required to prove three elements: (1) F.R. had dominion and control of a controlled substance in a quantity usable for consumption or sale; (2) he had knowledge of its presence; and (3) he had knowledge of its "restricted dangerous drug character." (*People v. Martin* (2001) 25 Cal.4th 1180, 1184; *People v. Palaschak* (1995) 9 Cal.4th 1236, 1242; see CALCRIM No. 2304.)[6] F.R.'s appeal challenges solely the sufficiency of the evidence to support the third element: knowledge of the pills' nature as a controlled or restricted substance.

Knowledge of the nature of the substance, like the other elements of the crime of simple possession of a controlled substance, may be established by circumstantial evidence and any reasonable inferences drawn from that evidence. (*People v. Williams* (1971) 5 Cal.3d 211, 215 (*Williams*); *People v. Palaschak, supra,* 9 Cal.4th at p. 1242.) For example, "knowledge of a substance's narcotic nature may be shown by evidence of

---

[6]     There is no specific intent required for the crime of simple possession of controlled substances: "Although the possessor's knowledge of the presence of the controlled substance and its nature as a restricted dangerous drug must be shown, no further showing of a subjective mental state is required." (*People v. Martin, supra*, 25 Cal.4th at pp. 1184-1185 & fn. 4.)

the defendant's furtive acts and suspicious conduct indicating a consciousness of guilt, such as an attempt to flee or an attempt to hide or dispose of the contraband [citations], or by evidence showing a familiarity with the substance, such as needle marks or other physical manifestations of drug use or instances of prior drug use." (*People v. Tripp* (2007) 151 Cal.App.4th 951, 956; see, e.g., *People v. Rushing* (1989) 209 Cal.App.3d 618, 622, fn. 2 [jury could reasonably infer defendant knew of the controlled nature of cocaine in his possession by the fact it was hidden in a WD-40 can with a false bottom].)

There is no evidence in the record here either that F.R. acted in a manner indicating a consciousness of guilt or that he had any familiarity with hydrocodone. He did not attempt to flee from the school security guard or give any false statements to the guard or to Deputy Hornig. (See *People v. Lucas* (1960) 180 Cal.App.2d 723, 725 [substantial evidence of knowledge where defendant with heroin in shirt pocket fled upon seeing officers and lied about his employment and residence].) He made no effort to hide or dispose of the pills. (See *People v. Physioc* (1948) 86 Cal.App.2d 650, 651 [substantial evidence of knowledge where defendant hid small white pill-shaped tablets of morphine in match box and tossed match box from his pocket upon officer's arrival].) There was no showing he was familiar with prescription pain killers, had in his possession any paraphernalia associated with this type of controlled substance or manifested any signs of actual drug use. (See *People v. Garringer* (1975) 48 Cal.App.3d 827, 830-831 [substantial evidence where defendant knew red phenobarbital capsules were "some kind of drugs," had dilated, red and watery eyes, slurred and incoherent speech and unsteady balance].) Similarly, because the pills were simply loose in F.R.'s pants pocket and not, for example, in a prescription bottle with someone else's name on the label, there was nothing about their "packaging" that indicated their restricted nature. (See *People v. Anderson* (1970) 6 Cal.App.3d 364, 371 ["[i]t would be most extraordinary that the defendant would attempt to deny that she knew the nature of the green leafy substance which was wrapped in a cellophane bag within a box which she was carrying in her purse"].)

Contrary to the People's argument, the fact Rigby smelled marijuana as he approached F.R. does not support the inference F.R. knew what he possessed was a controlled substance. Rigby did not testify either of the two students was, in fact, smoking marijuana; and nothing in the record indicates any marijuana was found anywhere near the site, let alone in F.R.'s possession. Moreover, possession or use of marijuana, even if it had been proved, does not suggest familiarity with the restricted character of hydrocodone. (Cf. *People v. Williams* (1988) 44 Cal.3d 883, 905 [the other-act evidence must serve "logically, naturally, and by reasonable inference" to establish the disputed fact].) Marijuana is packaged and ingested in a way completely dissimilar from prescription pills.

In sum, the only evidence to support an inference F.R. knew the pills contained a controlled substance was their presence in his pants pocket and the fact he had two different types of pills, as reflected by the alphanumeric markings on them.[7] Relying on the Supreme Court's statement in *People v. White* (1969) 71 Cal.2d 80, 83 (*White*) that "mere possession of a narcotic constitutes substantial evidence that the possessor of the narcotic knew its nature," the People argue no more is needed. However, as the Supreme Court itself recognized in *Williams, supra*, 5 Cal.3d at page 216, *White* does not stand for such a sweeping proposition—one that would effectively eliminate knowledge of the character of the substance as an element of the crime of possession of a controlled substance. (*William*, at p. 215 [reversing conviction because "we find no evidence whatsoever, circumstantial or otherwise, to support a finding that defendant knew the tablets in Shublin's car were restricted dangerous drugs"].)

---

[7] The juvenile court's comment "there were multiple types of pills" is not supported by the record. As discussed, although Deputy Hornig initially testified he recovered "several pills, different kinds," when asked to describe the pills, he identified only two types: one white oblong shaped tablet marked "M360"; and "others," whose shape was not described, marked "9358." The criminalist apparently examined only three pills; nothing in the stipulation concerning his analysis of the pills indicates there were more than these two types of pills or tablets in F.R.'s possession.

In *White* four marijuana cigarettes and two burnt cigarette stubs ("roaches") were found on a dresser in the defendant's bedroom. (*White, supra*, 71 Cal.2d 80 at p. 82.) Thus, the Supreme Court's conclusion "mere possession" constitutes substantial evidence of the defendant's knowledge of the restricted dangerous nature of the substance in his possession was made in a context in which the very appearance of the recovered items themselves signaled their illicit character. The marijuana in the cigarettes was necessarily prepared for ingestion with the substance ground and rolled into papers to be lit and smoked; the roaches indicated prior drug use or familiarity with the substance. In addition, marijuana has a particularly distinctive and identifiable quality—a green, leafy texture and unique odor. (See *People v. Anderson, supra,* 6 Cal.App.3d at p. 371.)

In *Williams*, in contrast, the Supreme Court acknowledged the presence of contraband on an accused's person or among his or her personal effects "ordinarily" will be sufficient proof the accused knew what he or she possessed and its nature. (*Williams, supra,* 5 Cal.3d at p. 216.) Mere possession, however, is not always proof of knowledge, particularly when, as in the case before it, the defendant had only "constructive possession" of the substance—that is, "dominion and control and immediate access to contraband." (*Ibid.*) In that situation the Court found, "[d]efendant's knowledge of the *presence* of the tablets would not necessarily establish defendant's knowledge of their *character*; the officer described these tablets as 'white' and 'double-scored' and as 'resembling' benzedrine, but there was no evidence in the record that these tablets were particularly distinctive or identifiable as restricted dangerous drugs, or that defendant or anyone else would have recognized the tablets as such." (*Id.* at p. 215.) Accordingly, the Court held, "although defendant may have been in constructive possession of the contraband [found on the floor in front of the passenger seat of a vehicle in which he was riding], such possession alone does not satisfy the requirement of knowledge developed by the cases." (*Id.* at p. 216; see *People v. Tripp, supra*, 151 Cal.App.4th at pp. 958-959 ["[w]e read *Williams* as clarifying that the circumstances of the defendant's possession in *White* so strongly suggested he knew of the drug's narcotic nature that those circumstances also provided proof of the knowledge element"].)

8

Here, as in *Williams*, there was no evidence to suggest F.R. knew the nature of the pills in his possession.  A white oblong tablet with alphanumeric markings describes generic, off-the-shelf acetaminophen, as well as the controlled substances F.R. actually possessed.  Nothing in the record indicates the pills were distinctive or readily identifiable as restricted dangerous drugs.  That F.R. had two different types of nondescript pills or that he was a high school student—the additional factors identified by the juvenile court to support its finding of knowledge—is insufficient to prove this element of the crime.

To be sure, we, like the juvenile court, have a strong suspicion F.R. knew exactly what he had in his pocket.  But as the Supreme Court held in *People v. Redmond* (1969) 71 Cal.2d 745, 755, and reiterated in *Williams, supra*, 5 Cal.3d at pages 216 through 217, "Evidence which merely raises a strong suspicion of the defendant's guilt is not sufficient to support a conviction.  Suspicion is not evidence; it merely raises a possibility, and this is not a sufficient basis for an inference of fact." (See *People v. Tripp*, *supra*, 151 Cal.App.4th at  p. 957 [an "evidentiary link was missing" when only evidence of defendant's knowledge of nature of methamphetamine, which resembled spilled salt, was its presence on the nightstand in defendant's room in a house he shared with others].)  The evidence was insufficient to support the finding F.R. knew the pills contained hydrocodone.

## DISPOSITION

The juvenile court's order is reversed.


PERLUSS, P. J.

We concur:


WOODS, J.                    ZELON, J.