Filed 7/21/14  P. v. Martin CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058888 |
| v. | (Super.Ct.No. HEF970426) |
| ROBERT LOUIS MARTIN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  James S. Hawkins, Judge. Reversed with directions.

Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, and Warren Williams, Deputy Attorneys General, for Plaintiff and Respondent.

1

I

INTRODUCTION

Defendant Robert Louis Martin appeals the trial court's denial of his petition to modify his indeterminate sentence of 26 years to life. (Pen. Code, § 1170.126.)[1] Defendant argues that he did not waive his personal appearance at the hearing; his trial counsel provided ineffective assistance of counsel; and the trial court abused its discretion.

We conclude defendant was denied his constitutional right to attend the sentencing hearing. We vacate the order denying defendant's petition and remand for the trial court to conduct a new hearing at which defendant is present.[2]

II

FACTUAL AND PROCEDURAL BACKGROUND

A. *The 1997 Crimes*

Defendant's sentence in this case was imposed after his conviction in 1998. In an earlier appeal, the facts were described by the California Supreme Court as follows:

"On June 3, 1997, defendant Robert Louis Martin was living with his girlfriend, Janelle Davis, and her 19-year-old son, Guy Davis, in Hemet, California. Sometime in the late afternoon a family altercation commenced at the home during a visit by Janelle's nephew, Charles Trip, and his wife, Nicole Trip. Defendant returned home with his three

---

[1] All statutory references are to the Penal Code unless stated otherwise.

[2] Defendant filed a petition for writ of habeas corpus (case No. E059764), which we ordered considered with this appeal. We resolve that petition by separate order.

young children shortly after Charles and Nicole arrived. According to Janelle, who testified for the defense, when defendant entered the house she called him into the kitchen, handed him a small packet of white powder she had just discovered in Guy's room, which she suspected to be drugs, and asked defendant to '[g]et rid of it.'[] The two then returned to the living room and began arguing with the visitors.

"The melee escalated.[] Guy Davis entered the argument and, according to his mother's testimony, hit defendant with a pipe, accidentally hitting her as well. Nicole Trip testified Guy was wielding a small 'bat' and defendant had picked up a chair and was holding it over his head in a threatening manner. As the visitors and a neighbor, Kenneth Biggs, became involved in the fracas, defendant yelled for everyone to get out of the house. Defendant's children ran from the house, and most of the adults also exited, including defendant. Ultimately, defendant wound up outside in the alley behind the house, facing a group of adults comprised of family members and neighbors as he screamed and swung a metal pipe around himself in an arc, as one would swing a baseball bat. Defendant also picked up and threw rocks at the group, hitting a neighbor, Naomi Biggs, in the leg. Nicole Trip testified that as she tried to go past defendant to enter the house to call police,[] defendant stepped in her direction and took a 'full swing' at her with the pipe. She 'jump[ed] back' and the pipe missed her by three or four feet. Defendant did not actually hit anyone with the pipe during the episode.

"Police officers Randy Jahn and Scott Jernagan arrived on the scene at 7:00 p.m. They found defendant and a neighbor, Kenneth Biggs, in a fighting stance with others standing around. A three-foot length of pipe was recovered from the ground six inches

3

from where defendant was standing. After questioning defendant and the others at the scene for approximately 30 minutes, Officer Jahn handcuffed defendant and took him into custody, and Officer Jernagan transported him to the Hemet police station. At the station Officer Jernagan searched defendant's pants pockets and discovered a 'bindle' containing .12 grams of methamphetamine. When Officer Jahn questioned defendant about the methamphetamine, he responded, 'I don't know how I got it, and it's not mine. I don't know how it got there.'" (*People v. Martin* (2001) 25 Cal.4th 1180, 1182-1183.)

*B. The 1998 Convictions*

A jury convicted defendant of three offenses: assault with a deadly weapon (§ 245, subd. (a)(l) [swinging the pipe at victim Nicole Trip]); possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)); and misdemeanor battery (§ 242 [(hitting Naomi Biggs with rocks)].) The court found true the enhancement allegations that defendant had not remained free of convictions for five years after serving a prison term (§ 667.5, subd. (b)) and had previously been convicted of three serious and violent felonies. (§§ 667, subds. (c) & (e), 1170.12, subd. (c); *People v. Martin, supra,* 25 Cal.4th at pp. 1183-1184.)

At sentencing on December 19, 1998, the court expressly declined to exercise its discretion under section 1385 to strike any of the prior convictions. Defendant was sentenced to two concurrent prison terms of 25 years to life for both of the felony convictions; one concurrent term of six months in county jail for the misdemeanor battery conviction; and a one-year consecutive prison term for not having remained free of

4

imprisonment or felony convictions for five years. (*People v. Martin, supra,* 25 Cal.4th at p. 1184.)

## C. The Appeals to the Court of Appeal and the Supreme Court

After this court reversed defendant's conviction of assault with a deadly weapon for insufficiency of evidence and vacated the 25-year-to-life indeterminate term for that offense, the California Supreme Court affirmed the judgment in 2000. (*People v. Martin, supra,* 25 Cal.4th at pp. 1184, 1193.) Consequently, defendant is serving a sentence of 26 years to life based on his conviction for possession of .12 grams of methamphetamine. Defendant has now been incarcerated for more than 15 years and faces a minimum of six more years before parole eligibility.

## D. Defendant's Petition

In November 2012, the California voters approved Proposition 36, the Three Strikes Reform Act of 2012, adding section 1170.126, which provides a resentencing option to "persons presently serving an indeterminate term of imprisonment pursuant to" the Three Strikes Law. (Reform Act, § 6.)

On December 3, 2012, defendant filed a "motion for modification of sentence under the Three Strikes Reform Act." In his petition, defendant listed his birthdate, January 17, 1951. He included letters of support from his mother—who was offering him a place to live when he was released—and his five adult children. He attached a verification of his mobility impairment, dated June 4, 2007. A physician documented hypertrophic arthritis in defendant's left knee and hypertrophic spurring on his lumbar spine. Defendant also attached vocational and educational reports for 12 years, 2000-

5

2012, and certificates from self-help programs for six years, 2004-2010. He served as a prison softball umpire in 2010, 2011, and 2012. He attached four rules violation reports for 2002, 2005, and 2008. A public defender, Joseph Forth was appointed to represent defendant.

The Riverside County District Attorney's Office filed a one-page boilerplate opposition to the petition, checking the box stating "defendant's criminal conviction history, types of crimes, the extent of injuries to victims and the number of serious and/or violent convictions indicate that defendant posed an overwhelming and unreasonable risk of danger to public safety."

The hearing on defendant's petition was continued numerous times with defendant absent. On May 20, 2013, defendant filed a document asking for information about why his case was being continued and asking for the name of his lawyer and to have communication with him.

In written opposition filed on May 30, 2013, the prosecutor outlined defendant's conduct in prison between 1999 and 2009 and his criminal history from 1974 until 1993—including convictions in 1980, 1981, 1987, and 1991 for robbery, assault with a firearm, and assault with a deadly weapon, which also allegedly involved sex crimes. However, the prosecutor's submissions did not include any authenticated records because they had been ordered but not received. The opposition was served on the public defender but not on defendant.

At the hearing on defendant's petition on May 31, 2013, the public defender told the court that defendant had waived his appearance for the hearing. The court stated that

6

it had read all of defendant's 114-page submission and the prosecutor's opposition. After determining that defendant was statutorily eligible to petition for recall of sentence, the court nevertheless concluded that defendant posed an unreasonable risk of danger to public safety pursuant to section 1170.126, subdivision (f), and declined to resentence him, commenting:

"[H]aving done the trial and now having looked at his criminal history and his types of crimes—and the ones that he was committed for in this case was only an 11377—the appellate court reversed his 245, the length of time he's been in prison, any remoteness, any injuries to victims, the CDC 115s [the rules violations reports,] I'm going to—I've considered it factually and have balanced the factors, and I'm going to deny his request to be resentenced."

On June 10, 2013, defendant filed a request for rehearing which referenced his lack of communication with his lawyer and asserted that he was in a wheelchair and did not pose a danger to public safety. Defendant also objected to the prosecutor's characterization of his prison record. Finally, defendant asserted that the trial court had not been given the information that his family had arranged for his enrollment in a reentry program upon release. The court summarily denied the rehearing request.

III

CONSTITUTIONAL AND STATUTORY RIGHTS

TO APPEAR AT RESENTENCING

Section 1170.126 "provides a means whereby prisoners currently serving sentences of 25 years to life for a third felony conviction which was not a serious or

7

violent felony may seek court review of their indeterminate sentences and, under certain circumstances, obtain resentencing as if they had only one prior serious or violent felony conviction." (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1286.) "First, the court must determine whether the prisoner is eligible for resentencing; second, the court must determine whether resentencing would pose an unreasonable risk of danger to public safety; and third, if the prisoner is eligible and resentencing would *not* pose an unreasonable risk of danger, the court must actually resentence the prisoner." (*Id.* at p. 1299.) "[O]nce a court determines that a petitioning prisoner is eligible for resentencing under the Act, the petitioner 'shall be resentenced' to a second strike sentence 'unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.'" (*Id.* at p. 301.)

A defendant has federal and state constitutional and statutory rights to be present at a sentencing hearing unless the right to appear has been expressly or impliedly waived. (*People v. Hines* (1997) 15 Cal.4th 997, 1038-1039; *People v. Superior Court* (*Kaulick*), *supra,* 215 Cal.App.4th at p. 1299; *People v. Arbee* (1983) 143 Cal.App.3d 351, 355-356; §§ 977, subd. (b), 1043, and 1193; Cal. Const., art I, § 15.) Under the Sixth Amendment's confrontation clause, a criminal defendant has the right to be personally present for effective cross-examination. Under the Fourteenth Amendment's due process clause, a criminal defendant has the right to be personally present if his presence is critical to the outcome and would contribute to the fairness of the procedure. (*People v. Waidla* (2000) 22 Cal.4th 690, 741-742.)

Section 1170.126, subdivision (i), permits a petitioning defendant to execute a written waiver of a resentencing hearing: "[A] defendant petitioning for resentencing may waive his or her appearance in court for the resentencing, provided that the accusatory pleading is not amended at the resentencing, and that no new trial or retrial of the individual will occur. The waiver shall be in writing and signed by the defendant." (§ 1170.126, subd. (i).) However, even without a waiver, a defendant's absence may be deemed nonprejudicial. (*People v. Robertson* (1989) 48 Cal.3d 18, 59-62; *People v. Hines, supra*, 15 Cal.4th at p. 1039.) A defendant's absence may not be prejudicial if his presence does not bear a reasonably substantial relation to his opportunity to defend against the charges. (*People v. Dennis* (1998) 17 Cal.4th 468, 538; *People v. Ayala* (2000) 23 Cal.4th 225, 288, fn. 8; *People v. Virgil* (2011) 51 Cal.4th 1210, 1234.)

The People argue that defendant's personal appearance would not have changed the court's ruling because defendant had already submitted comprehensive materials in support of his petition. Furthermore, any additional information regarding a reentry program or his physical circumstances would not have been relevant to the court's determination of defendant's danger to the public. The People assert there was no prejudice. We disagree for the following reasons.

First, it is highly problematic that Forth, defendant's public defender, had no contact whatsoever with defendant and then told the court that defendant had waived his appearance. No evidence in the record demonstrated a waiver by defendant. Furthermore, we cannot confidently say there was no prejudice. Had the trial court been aware of defendant's use of a wheelchair in addition to defendant's age, it may have

9

affected the court's determination of his dangerousness. Had defendant personally appeared, he could also have clarified his position that the prison disciplinary actions had been resolved as lesser offenses; he had never threatened or assaulted a guard; and he had not been cited since 2008 or 2009. Defendant's potential placement in a reentry program was also relevant to the issue of his dangerousness because it would have established his intention to obtain the kind of postrelease support that helps a parolee avoid recidivism. Finally, it was questionable for the court to rely on the prosecutor's summary of defendant's criminal record, rather than authenticated records. It is unclear why the People could not have obtained the appropriate documentation in the six months between December 2012 and May 2013 rather than asking the court to rely on the prosecutor's summary.

Based on the foregoing, we conclude defendant was denied his constitutional and statutory rights and received ineffective assistance of counsel because there is no satisfactory explanation for Forth not communicating with defendant and making certain that he could appear personally at the hearing. A different outcome may have been possible based on additional information. (*People v. Pope* (1979) 23 Cal.3d 412, 422-425; *People v. Ledesma* (1987) 43 Cal.3d 171, 215.) Because we are remanding for a rehearing with defendant personally appearing, we do not address the issue of whether the trial court properly exercised its discretion based on the present record.

## IV

## DISPOSITION

We vacate the order denying defendant's petition and remand for the trial court to conduct a new hearing with defendant appearing personally.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


McKINSTER
      Acting P. J.


KING
      J.

11