Filed 8/27/13  P. v. Claunch CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHRIS ALLAN CLAUNCH,<br><br>    Defendant and Appellant. | F062665 & F063179<br><br>(Super. Ct. Nos. BF130927A  &  BF134650A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  David R. Lampe, Judge.

Daniel G. Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Galen N. Farris, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A jury convicted appellant Chris Allan Claunch of possession of methamphetamine and resisting arrest.  He contends his convictions should be reversed because the trial court (1) denied his request for DNA testing of the syringe containing methamphetamine, which he claims deprived him of due process and the right to present a defense, and (2) erred prejudicially when it responded to a question from the jury regarding the defense of momentary possession and used language other than that used in the pattern instruction, CALCRIM No. 2305.  We reject his contention on the request for DNA testing, but agree that the trial court erred prejudicially when it sought to modify CALCRIM No. 2305.  Consequently, we will reverse the conviction for possession of methamphetamine.

## FACTUAL AND PROCEDURAL SUMMARY

On the morning of February 8, 2010, Bakersfield Police Officer Nathan McCauley was in his patrol car when he saw a bicyclist, Claunch, fail to stop fully at a stop sign.  Claunch was wearing jeans and a red and black plaid jacket with a black hood and had something around his neck that looked like a belt.  McCauley conducted an enforcement stop at the corner of North Baker and Jeffrey Streets.  As McCauley approached, he asked Claunch for identification and "what his status was."

Instead of responding to McCauley's request, Claunch ran and McCauley ordered him to stop.  McCauley gave chase and also began broadcasting Claunch's description and direction of travel on the police radio.  McCauley lost sight of Claunch for a short period of time, after which McCauley saw that another officer had detained Claunch.  Claunch no longer was wearing the red and black plaid jacket but still had the belt around his neck.

After Claunch was detained, McCauley searched for the red and black jacket.  Claunch gave McCauley some general directions where to find it.  McCauley found it in the backyard of a house that was two or three houses away from where he had lost sight of Claunch.  When McCauley searched the jacket, he found a hypodermic syringe with a

2.

clear, slightly brownish-colored liquid in it. The liquid later was determined to be .22 grams of methamphetamine, a usable amount.

Claunch was charged with transportation of methamphetamine, possession of methamphetamine, and misdemeanor resisting arrest. The information also alleged that Claunch had served four prior prison terms.

At trial, Claunch testified in his own defense. He stated the syringe had been used by his girlfriend, Staci Traynor, the night before his arrest. He had been directed by James Fitch, the owner of the house where he and Traynor were staying, to dispose of the syringe when Fitch spotted it that morning. He grabbed Traynor's jacket and the syringe, intending to dispose of the syringe and buy some alcohol at a liquor store. He left the house shortly after Fitch asked him to dispose of the syringe. After he left the house, he broke the needle off the syringe but did not dispose of the syringe at the house because he did not want it found at Fitch's house.

Claunch testified he ran from McCauley because there was a no-bail warrant for his arrest for driving on a suspended license. He maintained he discarded the plaid jacket when he ran away so as to change his appearance; there was no intent to hide the methamphetamine. Claunch denied using, or intending to use, the syringe. There was no evidence at trial that Claunch was under the influence of any substance at the time of his arrest; nor were any track marks or other signs of use found on his person.

Traynor was called to testify but invoked her privilege against self-incrimination on the advice of counsel. An investigator for the Kern County Public Defender's Office, Kaitlyn Giboney, testified regarding her interview of Traynor on June 8, 2010.

Giboney testified Traynor had told her the red and black jacket belonged to her and that she, Traynor, had put an "outfit" or syringe in the pocket of the jacket the night before Claunch was arrested. Traynor told Giboney drugs were still in the syringe when she placed it in the jacket because the needle would not work. Traynor also told Giboney her (Traynor's) blood would be on the syringe.

3.

Fitch also testified for the defense. He stated he had known Claunch for several years. He found the syringe in a jacket in the house and told Claunch to get rid of the syringe.

The jury found Claunch not guilty of the charge of transportation of methamphetamine, guilty of possession of methamphetamine and misdemeanor resisting arrest, and found each of the prior prison term enhancements true. The trial court sentenced Claunch to a total term of six years in prison.

## DISCUSSION

Claunch raises two issues. First, he contends the trial court's denial of his request for DNA testing of the syringe containing methamphetamine deprived him of due process and the right to present a defense. Second, the trial court erred prejudicially when it responded to a question from the jury regarding the defense of momentary possession and used language other than that used in the pattern instruction, CALCRIM No. 2305.[1]

## I.     DNA Testing

Claunch claims the trial court deprived him of his due process rights and the ability to present a defense when it denied his request to conduct DNA testing of the syringe. Alternatively, he contends if the trial court properly denied his request based upon the timing of his request, defense counsel rendered ineffective assistance. Claunch mischaracterizes his request made to the trial court. Regardless, there was no error or ineffective assistance of counsel.

---

[1]On January 13, 2012, this court granted Claunch's motion to consolidate this appeal with case No. F063179 (*People v. Claunch*). Claunch does not raise any issues with respect to the conviction that is the subject of the appeal in case No. F063179.

*Factual Summary*

On January 20, 2011, after trial commenced, Claunch requested new counsel be appointed to represent him. The trial court conducted a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 to inquire into Claunch's reasons for seeking new counsel. When asked, Claunch stated he wanted new counsel because he had repeatedly asked defense counsel to test the "outfit or needle or syringe" for DNA in order to prove that it was not his and he had only momentary possession in order to destroy it.

Defense counsel responded to this statement by stating that when she was assigned to the case several months prior, she brought Claunch's request to the attention of her supervisor in the public defender's office. The conclusion reached was that DNA testing of the syringe would not help in the defense because Claunch was charged with possession.

The trial court noted that the only issue before it was the issue of appointment of new counsel and whether Claunch had demonstrated grounds for appointment of new counsel. The trial court noted Claunch's request was legal in nature and that defense counsel's "explanation of the status of the matter [was] very understandable from a standpoint of the law." The trial court found there was no breakdown in the attorney-client relationship. The trial court also noted the request for substitute counsel "would require a strong showing of some incompetence or some strong reason for substitution of an attorney" when made after trial had commenced and that the request for substitute counsel was "untimely."

After the trial court denied Claunch's *Marsden* motion, he requested he be allowed to represent himself. The trial court denied the request because Claunch was not prepared to proceed with the trial if he was representing himself and instead wanted a continuance of the trial. Defense counsel then stated it was her client's wish for a continuance and for DNA testing of the substance in the syringe. The trial court denied the request, stating it "[was] not the time for pretrial discovery."

5.

*Analysis*

Claunch characterizes his request to the trial court as a request for DNA testing. Not so. This was a *Marsden* motion denied by the trial court, which was followed by a request from Claunch for a continuance in order to obtain DNA testing of the substance in the syringe.

We review a trial court's ruling declining to relieve appointed counsel under the deferential abuse of discretion standard. (*People v. Jones* (2003) 29 Cal.4th 1229, 1245 (*Jones*); *People v. Silva* (2001) 25 Cal.4th 345, 367.) "'"When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. [Citation.] A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result."' [Citation.]" (*People v. Roldan* (2005) 35 Cal.4th 646, 681.)

The trial court did not abuse its discretion in denying Claunch's *Marsden* motion. Once Claunch indicated he wanted new counsel, the trial court properly held a hearing, at which it permitted Claunch thoroughly to articulate his complaints about defense counsel, inquired into the issues raised, and required defense counsel to respond. Through this inquiry, the trial court ascertained that defense counsel made a tactical decision not to seek DNA testing of the syringe. "We do not find *Marsden* error where complaints of counsel's inadequacy involve tactical disagreements. [Citations.]" (*People v. Dickey* (2005) 35 Cal.4th 884, 922.)

We also reject Claunch's claim concerning the trial court's denial of a continuance in order to conduct DNA testing of the syringe. "As a general rule, the ordinary rules of

6.

evidence do not impermissibly infringe on the accused's right to present a defense."
(*People v. Hall* (1986) 41 Cal.3d 826, 834.)

Claunch articulated at the *Marsden* hearing that his defense was premised on the syringe with methamphetamine not being his, and his momentary possession was only for the purpose of disposal. This was the defense presented by defense counsel at trial. Defense counsel presented testimony from Claunch, Fitch, and Giboney to the effect that the syringe and methamphetamine belonged to Traynor and that Claunch was intending to dispose of it at Fitch's request. Defense counsel requested the jury be instructed with CALCRIM No. 2305, which was given over the prosecutor's objection. Defense counsel argued to the jury that possession was momentary for the purpose of disposal.

The prosecutor did not argue or contend that Claunch was a drug user or the person who might have used the substance in the syringe. As defense counsel pointed out during the *Marsden* hearing, whether Claunch used the substance in the syringe or intended to use the methamphetamine in the syringe was irrelevant to the offense of possession. There was no requirement that Claunch intended to use or had used the methamphetamine. The offense is a general intent crime requiring only knowing possession of the contraband. (*People v. Martin* (2001) 25 Cal.4th 1180, 1185, fn. 4 *(Martin)* [there is no specific intent required for the crime of simple possession of a controlled substance].)

We review the trial court's evidentiary ruling for abuse of discretion. (*People v. Lewis* (2001) 25 Cal.4th 610, 637.) Also, the trial court has broad discretion to determine whether good cause exists to support a continuance. (Pen. Code, § 1050, subd. (e).) Logically, if the evidence being sought is not relevant to a contested issue, the trial court's denial of a continuance to obtain that evidence is not an abuse of discretion, nor does the ruling deny the defendant due process.

Here, the record does not demonstrate an abuse of discretion with respect to a continuance for purposes of DNA testing. (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037.)

A defendant has the general right to offer a defense through the testimony of his or her witnesses. (*Washington v. Texas* (1967) 388 U.S. 14, 19.) The due process clause of the Fourteenth Amendment to the United States Constitution "require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense." (*California v. Trombetta* (1984) 467 U.S. 479, 485.) Claunch was afforded that opportunity when he presented testimony from Fitch, Giboney, and himself regarding the syringe.

A state court's application of ordinary rules of evidence, including the rule stated in Evidence Code section 352, generally does not infringe upon this right. (*People v. Lucas* (1995) 12 Cal.4th 415, 464.) The excluded evidence in Claunch's case was not so vital to the defense that due process principles required its admission. The DNA evidence establishing who might have tried to use the syringe and the methamphetamine in that syringe was irrelevant to the issues in the case. Claunch conceded possession of the syringe. The issue was whether his possession was momentary so as to constitute a defense to the charge of possession. (See *Martin, supra,* 25 Cal.4th at p. 1185, fn. 4; *People v. Hawthorne* (1992) 4 Cal.4th 43, 56-58.)

Moreover, we reject Claunch's contention that defense counsel was ineffective for failing to seek DNA testing of the syringe. "To prevail on a claim of ineffective assistance, a defendant must show both that counsel's performance was deficient—it fell below an objective standard of reasonableness—and that defendant was thereby prejudiced. [Citation.]" (*People v. Cash* (2002) 28 Cal.4th 703, 734.) With regard to the question of whether counsel's performance was objectively unreasonable, ""'[r]eviewing courts defer to counsel's reasonable tactical decisions … and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance.'" [Citations.] "[W]e accord great deference to counsel's tactical decisions" [citation], and … [the] "courts should not second-guess reasonable, if difficult, tactical decisions in the harsh light of hindsight" [citation.]'" (*Jones, supra,* 29 Cal.4th at p. 1254; accord *People v. Weaver* (2001) 26 Cal.4th 876, 928 ["'even "debatable trial tactics" do not "constitute a deprivation of the effective assistance of counsel"'"].) Claunch cannot establish ineffective assistance of counsel because there is no prejudice from failing to pursue and obtain evidence that is irrelevant to the contested issues.

## II. Momentary Possession Defense

Claunch maintained that he possessed the syringe momentarily and only for the purpose of disposing of it. The trial court instructed the jury with CALCRIM No. 2305, momentary possession of a controlled substance, but, in response to a question from the jury, the language was modified to "brief or fleeting or minimal," which Claunch contends was error.

### *Factual Summary*

After Fitch spotted the syringe on a counter, he asked Claunch to dispose of it. Claunch placed the syringe in a jacket pocket and left to dispose of the syringe "real soon after" being asked to do so. Claunch was stopped by McCauley about three blocks from Fitch's house.

During closing argument the prosecutor argued that in order for the momentary possession defense to apply, "you have to have a reflexive disposal of the drugs." The prosecutor also stated that the defense applied to a situation where "if someone were to grab methamphetamine and throw it, not transport it over—for any distance." The defense objected to this comment, but the trial court overruled the objection.

At the request of the defense, and over the objection of the prosecution, the trial court instructed the jury with CALCRIM No. 2305, momentary possession of a controlled substance.

After retiring to deliberate, the jury sent a note with a question regarding the momentary possession defense. The jury asked if the momentary possession defense applied to both the transportation and possession charges. In the same note the jury requested the judge to clarify the words "momentary" and "transitory."

The trial court announced its position that the defense applied to both charges. The trial court also stated it did not intend to define the words "momentary" and "transitory" further because the jury already had been instructed "to use the common-sense and ordinary definition of words not specifically defined" and indicated the pattern instruction would be repeated for the jury.

The prosecution asked to be heard and stated its position that the terms "momentary" and "transitory" did not have an ordinary meaning but presented "a legal question" that the trial court should define further. The prosecution argued the terms "momentary" and "transitory" should be defined as "fleeting, de minimus possession and a reflexive act of abandonment."

The defense argued the terms should not be defined further as suggested by the prosecution; rather, the language of the pattern instruction should be used.

The trial court opined that the terms "momentary" and "transitory" might invite the jury "to expand the definition beyond the limits of *People v. Martin*" and therefore the trial court would additionally define the terms as "brief or fleeting or minimal." The defense objected and claimed the additional definition would violate Claunch's right to due process and a fair trial.

*Analysis*

We review de novo whether the jury instructions given correctly stated the law. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) Penal Code section 1259 provides that we may review "any instruction given, refused or modified, even though no objection was made thereto" in the trial court. Here, Claunch objected to the trial court modifying the

10.

terms "momentary" and "transitory" when it responded to the jury's question. We conclude the trial court erred prejudicially.

"The essential elements of possession of a controlled substance are 'dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character. Each of these elements may be established circumstantially.' [Citations.]" (*People v. Palaschak* (1995) 9 Cal.4th 1236, 1242.)

Under limited circumstances, the momentary or transitory possession of an unlawful narcotic for the purpose of disposing of it can constitute a defense to a charge of criminal possession of the controlled substance. (*People v. Mijares* (1971) 6 Cal.3d 415, 419.) In other words, although there is no specific intent element in the crime of simple possession of a controlled substance, momentary possession of narcotics with the intent to dispose of the contraband can establish the defense of transitory possession. Recognition of a transitory or momentary possession defense serves the salutary purpose and sound public policy of encouraging disposal and discouraging retention of dangerous items, such as controlled substances and firearms. (*Martin, supra,* 25 Cal.4th at pp. 1182, 1191.) The *Mijares* defense also has been described as the "'temporary possession defense,'" the "'momentary possession defense,'" the "'transitory possession defense,'" and the "'disposal defense.'" (*Martin,* at p. 1191, fn. 4.)

A defendant has the burden of establishing the defense by a preponderance of the evidence. (*People v. Spry* (1977) 58 Cal.App.4th 1345, 1369.) CALCRIM No. 2305 instructs on the defense of momentary possession of a controlled substance. That instruction informs the jury that if a defendant possessed the controlled substance for "a momentary or transitory period" in order to abandon, dispose of, or destroy the controlled substance, then possession was not illegal. The terms "momentary" and "transitory period" are not further defined in CALCRIM No. 2305 or elsewhere in the pattern jury instructions.

11.

The trial court here stated that in order to prevent the jury from expanding CALCRIM No. 2305 beyond *Martin* and to guard against the jury applying the defense inappropriately, it would instruct the jury that "in addition to their ordinary meanings," the terms "momentary" and "transitory" also meant "brief or fleeting or minimal." The trial court did not obtain its definition of the terms from the dictionary;[2] rather, it reviewed case law apparently in the belief that the terms had some specific legal meaning.

A problem arises because "momentary" and "transitory period" as used in CALCRIM No. 2305 do not have any meaning other than their ordinary meaning. Jurors' common understanding of the terms is all that is required for them to be able to understand the relevant legal principles. (See *People v. Raley* (1992) 2 Cal.4th 870, 901.) We conclude the trial court should not have instructed in language other than that used in CALCRIM No. 2305 in an attempt to restrict the common understanding of "momentary" and "transitory period."

The jurors initially were instructed to apply words and phrases not specifically defined using their ordinary, everyday meanings before the trial court further defined the terms "momentary" and "transitory." Contrary to the prosecutor's comments, with which the trial court apparently agreed, the terms, as used in CALCRIM No. 2305, do not have a specific legal definition. If they did, the definition would be included in CALCRIM No. 2305 or in another pattern instruction.

The trial court opined that instructing the jury in the language of CALCRIM No. 2305 would "invite the jury to expand the definition beyond the limits of *People v. Martin*." Nothing could be further from the truth. The language of CALCRIM No. 2305

_____

[2]Webster's New World Dictionary (2d college ed. 1982) page 916 defines "momentary" as "lasting for only a moment; passing; transitory" and defines "transitory" as "of a passing nature; not enduring or permanent; temporary, fleeting, or ephemeral" (*id.* at p. 1510).)

12.

is taken directly from *Martin,* which concluded "the defense of transitory possession devised in *Mijares* applies only to momentary or transitory possession" for the purpose of disposal. (*Martin, supra,* 25 Cal.4th at p. 1191.)

Neither CALCRIM No. 2305 nor case law establishes a set time period, or a maximum time period, of possession that qualifies as momentary or transitory for purposes of the defense. The cases that have confronted the issue have indicated when a period of time is too long for the defense to be applied as a matter of law. In *Martin, supra,* 25 Cal.4th at pages 1192-1193, the defendant had possession of the controlled substance for a period of time that might have been as long as four hours, and the defendant conceded his period of possession was longer than momentary or transitory. In *People v. Hurtado* (1996) 47 Cal.App.4th 805, 814, the defendant maintained possession of the controlled substance for a period of at least two days, which the appellate court held as a matter of law was too long to qualify as momentary possession. In *People v. Sullivan* (1989) 215 Cal.App.3d 1446, 1453, the defendant was found guilty of manufacturing and possessing methamphetamine for sale, placing him outside the realm of a momentary possession defense. In *People v. Frazier* (1998) 63 Cal.App.4th 1307, 1312, possession lasted several hours and was found to be too long for momentary possession.

We will not determine the precise number of minutes in a momentary or transitory possession as that is a task for the jury. We do not think the time period involved here was too long as a matter of law.

Having concluded the trial court erred in expanding CALCRIM No. 2305, we must now determine the prejudice, if any, to Claunch. This case was close and the jury obviously labored over the momentary possession defense. Claunch's burden to prove the defense was by a preponderance of the evidence.

The jury deliberations lasted longer than the presentation of evidence. The jury received its charge and retired to deliberate the morning of January 24, 2011. Before

13.

1:30 p.m. that afternoon, the jury requested "a copy of Mr. Claunch's testimony." The trial court informed the jury that the court reporter would read back Claunch's testimony to the jury. The jury continued deliberations that afternoon, but by 9:30 a.m. the following morning a note was received from the jury asking for clarification of the terms "momentary" and "transitory." The jury then reviewed McCauley's testimony. At around 2:06 p.m. on January 25 the jury returned a verdict of guilty of possession but not guilty of transport of methamphetamine. (*People v. Markus* (1978) 82 Cal.App.3d 477, 480 [length of deliberations, requests for clarification of jury instructions, and failure to convict on all charges demonstrate a close case].)

The evidence of Claunch's guilt is not overwhelming. All testimony indicated the syringe belonged to Traynor; Fitch asked Claunch to dispose of it; Claunch left the house to dispose of the syringe shortly after being asked to do so and was stopped three blocks from Fitch's house; Claunch gave McCauley directions where to find the jacket containing the syringe; Claunch was not under the influence of a controlled substance and had no track marks indicating he used illegal substances at the time of his arrest; and Claunch had possession of the syringe for 30 minutes or less.

The prosecutor opined in closing argument that for the momentary possession defense to apply, disposal had to be a reflexive act and there could be no transport of the item to dispose of it. Although the defense objected to the remarks, and neither statement was legally correct, the objection was overruled. The act of disposal does not need to be reflexive and there is nothing in the defense that prohibits some transport of the item to allow for it to be disposed of. The extent of any transport that falls within the defense of momentary possession for the purpose of disposal is a matter for the jury to decide.

After considering the state of the evidence, the lower standard of proof, the errors during closing argument, and the trial court's limiting the CALCRIM No. 2305 instruction given to the jury, we conclude it is reasonably probable a result more favorable to Claunch would have been reached had the trial court adhered to its initial

response of using only the terms set forth in CALCRIM No. 2305 instead of acquiescing in the prosecution's request to narrow the instruction. (*People v. Watson* (1956) 46 Cal.2d 818, 836; see *People v. Fudge* (1994) 7 Cal.4th 1075, 1102-1103; *People v. Cudjo* (1993) 6 Cal.4th 585, 611; Evid. Code, § 354.)[3]

## DISPOSITION

The conviction for possession of methamphetamine, a violation of Health and Safety Code section 11377, subdivision (a), is reversed and the sentence is vacated. In all other respects the judgment is affirmed. The matter is remanded for further proceedings.

_____
CORNELL, J.

WE CONCUR:

_____
LEVY, Acting P.J.

_____
PEÑA, J.

---

[3] Claunch asserts the error is assessed under the *Chapman v. California* (1967) 387 U.S. 18, 24 standard. Regardless of whether *Chapman* or *Watson* applies, the error was prejudicial in this case.