Filed 9/15/15  P. v. Wallace CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID NELSON WALLACE,<br><br>    Defendant and Appellant. | H040770<br>(Santa Clara County<br>Super. Ct. No. C1360483) |

## I.     INTRODUCTION

Defendant David Nelson Wallace appeals after a jury convicted him of possession of methamphetamine.  (Health & Saf. Code, § 11377, subd. (a).)  The trial court found true allegations that defendant had two prior convictions that qualified as "strikes" (§§ 667, subds. (b)-(i), 1170.12) and an allegation that defendant had served one prior prison term (§ 667.5, subd. (b)).  At the sentencing hearing, the trial court dismissed one of the strikes and struck the prior prison term allegation, imposing a 32-month sentence.

On appeal, defendant contends the trial court gave an erroneous instruction on the defense of transitory possession.  (See *People v. Martin* (2001) 25 Cal.4th 1180, 1182 (*Martin*); *People v. Mijares* (1971) 6 Cal.3d 415, 422 (*Mijares*).)  Defendant also requests that this court independently examine the in camera proceedings related to his *Pitchess* motion (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*)).

For the reasons explained below, we will affirm the judgment.

## II.    BACKGROUND

### A.    Defendant's Arrest

At about 3:47 p.m. on June 28, 2013, Santa Clara County Sheriff's Deputy Joseph Piazza was on patrol, driving his police vehicle.  He saw defendant riding his bicycle.  After he passed defendant, Deputy Piazza saw defendant stop abruptly.  Defendant appeared to be adjusting his bicycle.  Deputy Piazza parked and got out of his vehicle in order to see if defendant needed any assistance.  Defendant told Deputy Piazza that he did not need any help.  Defendant then began rummaging through a laundry bag that he had been carrying.  Defendant's hands were shaking, and he told the deputy he was nervous.

Deputy Piazza asked defendant for identification, which defendant provided.  Deputy Piazza then asked defendant if he had anything illegal on him.  Defendant said, "I have some meth[amphetamine] and my girlfriend's pills in my pocket."  Deputy Piazza searched defendant, finding a baggie of methamphetamine and a separate baggie containing seven oval pills.  Both baggies were in defendant's front pocket.  The methamphetamine weighed 5.07 grams and the pills were metronidazole, which is used to treat bacterial infections and is not a controlled substance.

### B.    Defendant's Trial Testimony

At the time of the incident, defendant lived with Jessie Rowan, a paraplegic; he was Rowan's boyfriend and also her caretaker.  On the day of his arrest, defendant had been helping Rowan to clean up and organize her "clutter."  Defendant found the pills and the methamphetamine buried in a bin of clothing.  Rowan told defendant that she wanted to get rid of the pills. Defendant decided not to throw the methamphetamine or pills away at the house because he did not want those items there.[1]

---

[1] Defendant was asked if he decided not to dispose of the items at the house because he was afraid that Rowan would use the pills and methamphetamine.  He (continued)

2

When he was contacted by Deputy Piazza, defendant was in the process of going to City Team Ministries, where he planned to donate the items in the bag. Defendant was also intending to "get rid of some personal things that [he] found." Defendant had been riding the bicycle for about seven minutes prior to his contact with Deputy Piazza. Defendant had explained to the deputy that he was "getting rid of some medication and stuff that [Rowan] had and some donation clothes."

### C. Trial Proceedings

A jury found defendant guilty, as charged, of possession of methamphetamine. (Health & Saf. Code, § 11377, subd. (a).) Defendant waived jury trial as to allegations that he had two prior convictions that qualified as "strikes" (§§ 667, subds. (b)-(i), 1170.12) and an allegation that he had served one prior prison term (§ 667.5, subd. (b)), and the trial court found those allegations true. At the sentencing hearing, the trial court dismissed one of the strikes and struck the prior prison term allegation, and it imposed a 32-month sentence.

## III.  DISCUSSION

### A. Instruction on Transitory Possession Defense

Defendant contends the trial court erred by instructing the jury on the defense of transitory possession with CALJIC No. 12.06 rather than with CALCRIM No. 2305. Defendant contends that CALJIC No. 12.06 contains an additional element that is not required by *Mijares, supra,* 6 Cal.3d 415, the California Supreme Court case establishing that transitory possession may be a defense to possession of a controlled substance. Defendant contends the error violated his federal constitutional right to due process.

---

responded, "Well, you know, she sa[id] she didn't use it, and I don't use, you know, so why keep stuff around that neither one of us mess around with."

3

### 1. Instruction Given

The trial court instructed the jury on transitory possession pursuant to CALJIC No. 12.06 (Spring 2011 Rev.), as follows:

"A person is not guilty of a crime when his possession of a controlled substance is shown to be lawful.  The defendant has the burden of proving by a preponderance of the evidence all the facts necessary to establish that his possession of the controlled substance is lawful.

"The possession of [a] controlled substance is lawful where all of the following conditions are met:

"One, the possession is momentary *and is not based on either ownership or the right to exercise control over the controlled substance*;

"Two, the controlled substance is possessed solely for the purpose of abandonment, disposal or destruction;

"Three, the controlled substance is possessed with the purpose of terminating the unlawful possession of it by another person or preventing another person from acquiring possession of it; and

"Four, control is not exercised over the controlled substance for the purpose of preventing its imminent seizure by law enforcement."[2]  (Italics added.)

---

[2] All of the jury instructions in this case were from CALJIC rather than CALCRIM.  Although the CALCRIM instructions "are the official instructions for use in the state of California" and use of those instructions is "strongly encouraged" (Cal. Rules of Court, rule 2.1050(a)&(e)), this "does not establish that the prior CALJIC instructions were constitutionally defective." (*People v. Lucas* (2014) 60 Cal.4th 153, 294, disapproved on other ground in *People v. Romero and Self* (Aug. 27, 2015, S055856) __ Cal.4th __ [2015 Cal. LEXIS 5759].)  " 'Nor did their wording become inadequate to inform the jury of the relevant legal principles or too confusing to be understood by jurors.  The Judicial Council's adoption of the CALCRIM instructions simply meant they are now endorsed and viewed as superior.' [Citation.]" (*Ibid.*)

4

Defendant challenges the italicized portion of the instruction, claiming that in order for the transitory possession defense to apply, California law does not require a defendant to prove his or her possession was "not based on either ownership or the right to exercise control over the controlled substance."

### 2. Forfeiture

The Attorney General contends that defendant forfeited this claim because he did not object below. Defendant contends that the instruction was an incorrect statement of the law, and that the instructional error affected his substantial rights, such that his failure to object in the trial court did not result in forfeiture of this claim on appeal. (See *People v. Hudson* (2006) 38 Cal.4th 1002, 1012 [forfeiture rule does not apply when "the trial court gives an instruction that is an incorrect statement of the law"]; Pen. Code, § 1259 ["The appellate court may . . . review any instruction given, refused or modified, even though no objection was made thereto in the lower court, if the substantial rights of the defendant were affected thereby"].)

If defendant is correct that the instruction was incorrect because it added an erroneous element to the transitory possession defense, his substantial rights would be affected. (See *People v. Hillhouse* (2002) 27 Cal.4th 469, 503.) Thus, we will review the merits of defendant's claim.

### 3. Legal Background

In *Mijares, supra,* 6 Cal.3d 415, the question presented was "whether the act of handling a narcotic for the sole purpose of disposal constitutes 'possession' " within the meaning of a statute prohibiting possession of a controlled substance. (*Id.* at p. 417.) The defendant had been observed throwing a wrapped object, which contained heroin, from a car. The defendant testified at trial that he had been driving with a companion who appeared to be overdosing. He had removed the heroin from his companion's pocket and thrown it out of the car before taking his companion for emergency medical treatment. (*Id.* at p. 419.) On appeal, the defendant argued that "the jury should have

5

been instructed that if it believed he did not himself use heroin on the day in question or handle it in furnishing narcotics to [his companion] but instead had no contact with the narcotic other than to remove it from [his companion's] pocket for the purpose of disposal, such handling is insufficient for conviction of the crime of possession." (*Ibid.*) The California Supreme Court agreed. The court explained that "[i]n a literal sense, defendant here physically controlled the narcotic when he removed it from the pockets of [his companion] and threw it away," but that such conduct was not "included within the 'dominion and control' test of possession." (*Id.* at p. 421.)

The California Supreme Court revisited the transitory possession defense in *Martin, supra,* 25 Cal.4th 1180, where the court rejected the defendant's claim that the defense " 'is not limited to possession for "brief moments" only.' [Citation.]" (*Id.* at p. 1182.) The *Martin* court reaffirmed "that the defense of transitory possession devised in *Mijares* applies only to momentary or transitory possession of contraband for the purpose of disposal." (*Id.* at p. 1191.) The *Martin* court further explained: " 'When a defendant relies on the *Mijares* defense, he or she essentially admits the commission of the offense of simple possession of narcotics: The defendant exercised control over the narcotics, he or she knew of its nature and presence, and possessed a usable amount. [Citation.] However, the defendant additionally asserts that he or she possessed the narcotics for the limited purpose of disposal, abandonment, or destruction. *Mijares* does not serve to negate an element of the offense of possession of narcotics. Instead, it offers a judicially created exception of lawful possession under certain specific circumstances as a matter of public policy, similar to the defenses of entrapment and necessity.' " (*Ibid.*)

### 4. Analysis

Defendant contends that no legal authority supports the requirement, in CALJIC No. 12.06, that in order for the transitory possession defense to apply, the jury must find that a defendant's possession "is not based on either ownership or the right to exercise

6

control over the controlled substance." Defendant points out that this element is not contained in CALCRIM No. 2305.[3]

Based upon our reading of *Mijares* and *Martin*, we conclude that the instruction given here was correct insofar as it required defendant to prove that his possession of the methamphetamine was "not based on . . . ownership." Ownership of a controlled substance would be inconsistent with a "momentary or transitory possession of contraband for the purpose of disposal," which is required in order for the defense to apply. (*Martin, supra,* 25 Cal.4th at p. 1191.) On the other hand, a "momentary or transitory possession of contraband for the purpose of disposal" (*ibid.*) is not necessarily inconsistent with "the right to exercise control over the controlled substance." As explained in *Martin,* a defendant who is relying on the *Mijares* defense " 'essentially admits the commission of the offense of simple possession of narcotics,' " including the fact that he or she " 'exercised control over the narcotics.' " (*Ibid.*) A defendant may have the right to exercise control over an item during the brief period in which he or she possesses the item for purposes of disposal.

However, even assuming that the instruction was erroneous because it required defendant to prove that he did not have the right to exercise control over the

---

[3] CALCRIM No. 2305 provides: "If you conclude that the defendant possessed *<insert name of controlled substance>*, that possession was not illegal if the defendant can prove the defense of momentary possession. In order to establish this defense, the defendant must prove that: [¶] 1. The defendant possessed *<insert name of controlled substance>* only for a momentary or transitory period; [¶] 2. The defendant possessed *<insert name of controlled substance>* in order to (abandon[,]/ [or] dispose of[,]/ [or] destroy) it; [¶] AND [¶] 3. The defendant did not intend to prevent law enforcement officials from obtaining the *<insert name of controlled substance>*. [¶] The defendant has the burden of proving this defense by a preponderance of the evidence. This is a different standard of proof than proof beyond a reasonable doubt. To meet the burden of proof by a preponderance of the evidence, the defendant must prove that it is more likely than not that each of the three listed items is true."

7

methamphetamine, defendant was not prejudiced thereby, because on the facts of this case, he was not entitled to an instruction on the *Mijares* defense.

The facts of the instant case are closely analogous to *People v. Sullivan* (1989) 215 Cal.App.3d 1446 (*Sullivan*), which was expressly approved by the California Supreme Court in *Martin, supra,* 25 Cal.4th at page 1190. In *Sullivan,* the police stopped the defendant for traffic violations a quarter of a mile from his house. (*Sullivan, supra,* at p. 1450.) The defendant's car contained methamphetamine manufacturing materials, and a search of his person revealed that he was carrying 6.7 grams of methamphetamine. (*Id.* at p. 1449.) More methamphetamine manufacturing materials were found in a shed located on the defendant's property. According to the defendant, the methamphetamine and methamphetamine manufacturing materials belonged to someone who had been renting the shed from the defendant's girlfriend. Upon finding the materials, the defendant had decided to take them to an industrial park and dispose of them in a dumpster. (*Ibid.*)

On appeal from his convictions, which included possession for sale of methamphetamine and manufacturing of methamphetamine, the *Sullivan* defendant contended that he was entitled to an instruction on the defense of momentary or transitory possession. The court rejected the claim, explaining that the defendant's "own version of the facts show he made a conscious decision to exercise control and dominion over the methamphetamine for an extended period of time." (*Sullivan, supra,* 215 Cal.App.3d at p. 1453.) The defendant had not taken "merely momentary possession of the methamphetamine while disposing of it, e.g., his possession was not limited to handling the methamphetamine for the few moments it would take to carry it into the house and flush it down the toilet." (*Ibid.*) The court found it significant that the defendant had kept the methamphetamine "separate from the chemicals and equipment," that when stopped by the deputy, he "did not attempt to turn the methamphetamine over to the

8

police," and that he had put the methamphetamine in his pocket "to conceal it from the deputy and to retain possession of it." (*Ibid.*)

Here, defendant's "own version of the facts show he made a conscious decision to exercise control and dominion over the methamphetamine for an extended period of time." (*Sullivan, supra,* 215 Cal.App.3d at p. 1453.) Defendant testified that he had been riding his bicycle for about seven minutes while carrying the methamphetamine in his pocket. The defense also introduced into evidence a map showing that defendant traveled a substantial distance of many blocks while possessing the controlled substance. This evidence about the time and distance of defendant's travel was inconsistent with defendant taking "merely momentary possession of the methamphetamine while disposing of it." (*Ibid.*) As in *Sullivan,* defendant's possession was "not limited to handling the methamphetamine for the few moments it would take to carry it into the [bathroom] and flush it down the toilet." (*Ibid.*) Moreover, when defendant produced the methamphetamine, he did not tell Deputy Piazza that he was planning to dispose of it and he "did not attempt to turn the methamphetamine over to the police." (*Ibid.*) Finally, as in *Sullivan,* defendant had placed the methamphetamine in his pocket, "separate from" the other items that he was carrying to the donation center. (*Ibid.*)

In sum, the facts of this case failed to support an instruction on the transitory possession defense. Thus, defendant could not possibly have been prejudiced by the instruction as given.

**B.**     ***Review of In Camera Proceedings***

Defendant requests that this court independently examine the in camera proceedings related to his *Pitchess* motion. (See *Pitchess, supra,* 11 Cal.3d 531.) The Attorney General does not oppose this request.

**1.**     **Proceedings Below**

Prior to trial, defendant filed a *Pitchess* motion seeking discovery of personnel records for Deputy Piazza and a second deputy who had assisted in defendant's arrest.

9

At the hearing on defendant's *Pitchess* motion, defendant's trial counsel specified that the motion related to defendant's claims that the encounter was not consensual and that he was stopped without reasonable suspicion or probable cause. The trial court found that defendant established good cause for discovery of relevant materials as to both officers. The trial court conducted an in camera hearing with the custodian of records, but it found that there were no discoverable materials in the officers' files.

### 2. Relevant Legal Principles

In *Pitchess,* the California Supreme Court held that a criminal defendant is entitled to discovery of officer personnel records if the information contained in the records is relevant to his or her ability to defend against the charge. (*Pitchess, supra,* at pp. 536-537.)

The California Supreme Court detailed the procedure to be followed in connection with a *Pitchess* motion in *People v. Mooc* (2001) 26 Cal.4th 1216 (*Mooc*). After the defendant files his or her *Pitchess* motion, "[i]f the trial court concludes the defendant has fulfilled [the statutory] prerequisites and made a showing of good cause, the custodian of records should bring to court all documents 'potentially relevant' to the defendant's motion. [Citation.] The trial court 'shall examine the information in chambers' (Evid. Code, § 1045, subd. (b)), 'out of the presence and hearing of all persons except the person authorized [to possess the records] and such other persons [the custodian of records] is willing to have present' (*id.,* § 915, subd. (b); see *id.,* § 1045, subd. (b) [incorporating *id.,* § 915]). Subject to statutory exceptions and limitations . . . the trial court should then disclose to the defendant 'such information [that] is relevant to the subject matter involved in the pending litigation.' (*Id.,* § 1045, subd. (a).)" (*Mooc, supra,* at p. 1226.)

It is essential that the trial court make a record of the particular files, records, or documents produced by the custodian for the court's review. (*Mooc, supra,* 26 Cal.4th at p. 1228.) There should be a court reporter present to document any statements by the custodian, as well as any questions by the trial court and the custodian's responses.

10

(*Id.* at p. 1229.)  "The trial court should then make a record of what documents it examined before ruling on the *Pitchess* motion.  Such a record will permit future appellate review. . . .  Without some record of the documents examined by the trial court, a party's ability to obtain appellate review of the trial court's decision . . . would be nonexistent.  Of course, to protect the officer's privacy, the examination of documents and questioning of the custodian should be done in camera in accordance with the requirements of Evidence Code section 915, and the transcript of the in camera hearing and all copies of the documents should be sealed.  [Citation.]"  (*Id.* at pp. 1229-1230, fn. omitted.)

### 3.     Review of the In Camera Hearing Transcript

We have independently reviewed the sealed reporter's transcript of the in camera hearing regarding the *Pitchess* discovery of the officer's personnel records.  The record is sufficient to permit appellate review, and we conclude the trial court properly exercised its discretion in denying discovery.

### IV.    DISPOSITION

The judgment is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
MIHARA, J.

_____
GROVER, J.