Filed 1/22/16  P. v. Martin CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062562 |
| v. | (Super.Ct.No. HEF970426) |
| ROBERT LOUIS MARTIN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  James S. Hawkins, Judge. Affirmed.

Sharon M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott C. Taylor, and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION

Defendant Robert Louis Martin's criminal record began in 1965 when he was 14 years old.  He has been incarcerated since 1998 for felony possession of .12 grams of methamphetamine.  He turned 65 years old in January 2016.

After the passage of Proposition 36 and Proposition 47, defendant filed separate petitions under Penal Code sections 1170.126 and 1170.18[1] for recall of his indeterminate sentence of 26 years to life.  Defendant argues the trial court erred when it found defendant posed an unreasonable risk of danger to public safety and denied both petitions.  (§§ 1170.126, subds. (f) and (g), 1170.18, subd. (b).)  As to the first petition, he contends the trial court abused its discretion.  As to the second petition, he argues dangerousness must be proved beyond a reasonable doubt and the trial court employed the wrong criteria for evaluating dangerousness.

Our review of the record concludes that a preponderance of the evidence amply supported the trial court's exercise of its discretion.  It is unnecessary to prove dangerousness beyond a reasonable doubt.  Absent any statutory indication, the burden of proof is by a preponderance of the evidence, not beyond a reasonable doubt.  The trial court's determination was not irrational or arbitrary according to the standard of a reasonable person.  Defendant's criminal and prison history demonstrates that he has not

---

[1]  All further statutory references are to the Penal Code unless stated otherwise.

been rehabilitated. Furthermore, defendant has not rebutted the presumption that the trial court appropriately applied the relevant law. We affirm the judgment.

## II

## BACKGROUND

### A. *Defendant's 1998 Commitment Offense and Initial Appeal*

Defendant's 1998 commitment offense involved possession of .12 grams of methamphetamine. In 1997, defendant was involved in an altercation with his family members and neighbors. Beforehand, another of the people involved gave him the methamphetamine and asked him to dispose of it. (*People v. Martin* (2001) 25 Cal.4th 1180, 1182-1183.) "Ultimately, defendant wound up outside in the alley behind the house, facing a group of adults, [composed] of family members and neighbors[,] as he screamed and swung a metal pipe around himself in an arc, as one would swing a baseball bat. Defendant also picked up and threw rocks at the group, hitting a neighbor, Naomi Biggs, in the leg. Nicole Trip testified that as she tried to go past defendant to enter the house to call police, [] defendant stepped in her direction and took a 'full swing' at her with the pipe. She 'jump[ed] back' and the pipe missed her by three or four feet. Defendant did not actually hit anyone with the pipe during the episode." (*Id.* at p. 1183.) After police arrested defendant, they searched his pants pockets and discovered a 'bindle' containing .12 grams of methamphetamine. He claimed the drug was not his. (*Ibid.*)

A jury convicted defendant of three offenses: felony assault with a deadly weapon (§ 245, subd. (a)(l) [swinging the pipe at victim Nicole Trip]); possession of

3

methamphetamine (Health & Saf. Code, § 11377, subd. (a)); and misdemeanor battery (§ 242 [(hitting Naomi Biggs with rocks)].)  The court found true the enhancement allegations that defendant had not remained free of convictions for five years after serving a prison term (§ 667.5, subd. (b)) and had previously been convicted of three serious and violent felonies.  (§§ 667, subds. (c) & (e), 1170.12, subd. (c); *People v. Martin, supra*, 25 Cal.4th at pp. 1183-1184.)

At sentencing on December 19, 1998, the court expressly declined to exercise its discretion under section 1385 to strike any of the prior convictions.  Defendant was sentenced to two concurrent prison terms of 25 years to life for both of the felony convictions; one concurrent term of six months in county jail for the misdemeanor battery conviction; and a one-year consecutive prison term for not having remained free of imprisonment or felony convictions for five years.  (*People v. Martin, supra*, 25 Cal.4th at p. 1184.)

After this court reversed defendant's conviction of assault with a deadly weapon for insufficiency of evidence and vacated the 25-year-to-life indeterminate term for that offense, the California Supreme Court affirmed the judgment.  (*People v. Martin, supra*, 25 Cal.4th at pp. 1184, 1193.)  Consequently, defendant is serving a sentence of 26 years to life based on his felony conviction for possession of .12 grams of methamphetamine. Defendant has now been incarcerated for about 17 years.

B.  *The Denial of Defendant's Section 1170.126 Petition*

After passage of Proposition 36, the Three Strikes Reform Act of 2012 (the

4

Reform Act), section 1170.126 provides a resentencing option to "persons presently serving an indeterminate term of imprisonment pursuant to" the Three Strikes Law. (Reform Act, § 6.)

On December 3, 2012, defendant filed a petition for recall of sentence. On May 31, 2013, the trial court determined that he was eligible to petition for recall but denied his petition on the grounds that he posed an unreasonable risk of danger to public safety. Defendant appealed, and this court reversed the judgment in an unpublished opinion, on the grounds that defendant was denied his constitutional and statutory rights by not receiving an opportunity to appear personally at the dangerousness hearing, and that he received ineffective assistance of counsel when his counsel failed to communicate with him before the hearing. (*People v. Martin* (July 21, 2014, E058888) [nonpub. opn.] at pp. 9-10.)

On remand, defendant personally appeared at the second petition hearing on December 17, 2014. The trial court again determined that defendant posed an unreasonable risk of danger to public safety and denied his petition. Defendant filed a notice of appeal challenging the second denial of his section 1170.126 petition.

C. *Defendant's Petition for Recall of Sentence Filed Under Section 1170.18*

In November 2014, the enactment of Proposition 47, The Safe Neighborhoods and Schools Act (the Safe Act), mandated "misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession, unless the defendant has prior convictions for specified violent or serious crimes." (Safe Act, § 3, subd. (3).) In

5

addition, the Safe Act authorized "consideration of resentencing for anyone who is currently serving a sentence for any of the offenses listed herein that are now misdemeanors." (Safe Act, § 3, subd. (4).) The Safe Act added section 1170.18 (Safe Act, § 14), which provides a resentencing option to "person[s] currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense . . . ." (§ 1170.18, subd. (a).)

Defendant filed a petition for resentencing under section 1170.18 to convert his felony conviction for possession to a misdemeanor. On March 13, 2015, the trial court denied his petition on the grounds that defendant posed an unreasonable risk of danger to public safety. Defendant filed a notice of appeal challenging the denial of his section 1170.18 petition.

III

DISCUSSION

Defendant claims the trial court erred by determining that he poses an unreasonable risk of danger to public safety under sections 1170.126 and 1170.18. He specifically argues that his criminal history and prison records do not demonstrate that he currently poses an unreasonable risk of danger to the public. However, the evidence of defendant's behavior, both in and out of custody, supports the trial court's dangerousness determination.

6

*A. Standard of Review*

In his opening brief, defendant concedes the relevant standard of review applied to a ruling of dangerousness on a section 1170.126 petition is abuse of discretion. However, in his supplemental opening brief, defendant argues the court's dangerousness determination on a section 1170.18 petition must be based on a finding beyond a reasonable doubt, rather than by a preponderance of the evidence. We hold both petitions are subject to review for abuse of discretion.

In *Sentencing California Crimes,* the authors describe the standard of review for section 1170.126 and section 1170.18 petitions. The denial of resentencing based on dangerousness is reviewed for an abuse of discretion. The plain language of both section 1170.126, subdivisions (f) and (g), and section 1170.18, subdivision (b), calls for an exercise of the sentencing court's discretion: "'Discretion is the power to make the decision, one way or the other.' [Citation.]" (*People v. Carmony* (2004) 33 Cal.4th 367, 375.) "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125; see *People v. Williams* (1998) 17 Cal.4th 148, 162 [abuse-of-discretion review asks whether ruling in question falls outside bounds of reason under applicable law and relevant facts]; Couzens et al., *Sentencing Cal. Crimes* (The Rutter Group 2015) §§ 20.68 and 25.10.)

Section 1170.18 does not state what standard of proof should be employed. However, the only sentence adjustment possible is a reduction. According to the resentencing statute itself, "[u]nder no circumstances may resentencing under this section result in the imposition of a term longer than the original sentence." (§ 1170.18, subd. (e).) The resentencing does not violate the constitutional guarantee against sentence increases without a jury's finding. (*People v. Bradford* (2014) 227 Cal.App.4th 1322, 1336.) Because there was no possibility that defendant could receive a sentence greater than he already received, the proper standard of proof was preponderance of the evidence: "[It] is the general rule in California that once a defendant is eligible for an increased penalty, the trial court, in exercising its discretion to impose that penalty, may rely on factors established by a preponderance of the evidence. (*In re Coley* (2012) 55 Cal.4th 524, 557.) As dangerousness is such a factor, preponderance of the evidence is the appropriate standard." (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1305 (*Kaulick*).)

In *Kaulick*, the court held the prosecution's burden is to establish dangerousness by a preponderance of the evidence, and not by proof beyond a reasonable doubt: "[A] court's discretionary decision to decline to modify the sentence in his favor can be based on any . . . appropriate factor (i.e., dangerousness), and such factor need not be established by proof beyond a reasonable doubt to a jury." (*Kaulick, supra,* 215 Cal.App.4th at p. 1303.) The United States Supreme Court has held that most factors used to increase penalty must be submitted to the jury and proved beyond a reasonable

8

doubt, but in the context of Proposition 36 (and Proposition 47), "dangerousness is not a factor which enhances the sentence imposed when a defendant is resentenced under the Act; instead, dangerousness is a hurdle which must be crossed in order for a defendant to be resentenced at all. If the court finds that resentencing a prisoner would pose an unreasonable risk of danger, the court does not resentence the prisoner, and the petitioner simply finishes out the term to which he or she was originally sentenced." (*Kaulick,* at p. 1303.) Any facts found at such a proceeding, such as dangerousness, do not implicate the Sixth Amendment. (*Id.* at pp. 1304-1305.) The trial court, in exercising its discretion, may rely on factors establishing the defendant's dangerousness based on a preponderance of the evidence. (*Id.* at p. 1305.)

Defendant argues the reasoning of *Kaulick* should not apply to Proposition 47 determinations, because section 1170.18 involves an entirely different judicial mechanism than does section 1170.126 in that section 1170.18 changes the classification of the crimes, whereas section 1170.126 permits the reduction of third strikes to second strikes. Nevertheless, both statutes require the continued imprisonment of an inmate for a crime that would no longer require lengthy imprisonment if the inmate were sentenced today. This is permissible because the petitioning inmate may obtain rensentencing if he satisfies the necessary conditions of sections 1170.126 or 1170.18. There is no legal justification for requiring a disqualifying factor under section 1170.18 to be proved beyond a reasonable doubt.

9

*B. Propositions 36 and 47 and the Meaning of Dangerousness*

*1. Proposition 36, the Reform Act*

Under the Reform Act, a life sentence for a third strike offender is reserved for cases where the new felony is also serious or violent. (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167-168.) In all other cases, the recidivist will now be sentenced as a second strike offender. (*Id.* at p. 168; see §§ 667, 1170.12.)

The Reform Act also created a procedure for "persons presently serving an indeterminate term of imprisonment" to petition for recall of the sentence and for resentencing as a second striker, when the third strike offense is not a serious or violent felony. (See § 1170.126, subds. (a), (b).) Once a prisoner has met the requirements for eligibility for resentencing under section 1170.126, subdivision (e), the prisoner "shall be resentenced . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.I26, subd. (f).) Subdivision (g) describes the facts the court may consider: "(1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g).)

10

*2. The Safe Act*

The Safe Act, just like the Reform Act, created a procedure for inmates to petition for recall of the sentence and for resentencing as a misdemeanant if their felony conviction would have been a misdemeanor under the new law. (See § 1170.18, subd. (a).) Once an inmate has met the requirements for eligibility for resentencing under section 1170.18, subdivision (a), the prisoner's felony sentence "shall be recalled and the petitioner resentenced to a misdemeanor . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).) In "exercising its discretion," the court considers the same factors as set forth in section 1170.126, subdivision (g).

Although section 1170.126 did not define the meaning of "unreasonable risk of danger to public safety," section 1170.18, subdivision (c), defines the phrase to mean "an unreasonable risk that the petitioner will commit a new violent felony within the meaning of" Penal Code section 667, subdivision (e)(2)(C)(iv). (§ 1170.18, subd. (c).) Section 667, subdivision (e)(2)(C)(iv), enumerates several serious or violent felony convictions that are commonly referred to as "super strikes," and include, among other things, sexually violent offenses, any homicide offense, and "any serious and/or violent felony offense punishable in California by life imprisonment or death."

*C. The Hearing on Defendant's Petition Under Section 1170.126*

At the hearing on December 17, 2014, the prosecution introduced into evidence a copy of defendant's prison history, a certified copy of his criminal history, and a packet

of police reports.  Defendant submitted letters of support from his family and friends and a packet of educational certificates and other certificates of recognition, as well as medical documents.

*1.  Criminal History*

Defendant's criminal history began in 1965 when he was 14 years old.  From 1965 until 1979, he had a record of about 40 criminal incidents.  In July 1979, he was arrested for raping a woman in a public bathroom.  He agreed to a negotiated plea to one count of assault with a deadly weapon, and was sentenced to three years in prison.  Four more incidents occurred in 1979 and 1980.  In March 1981, defendant was arrested for raping a woman whom he forced into an alley while she was waiting for a bus.  He later threatened to kill her and her husband if she told anyone.  In May 1981, defendant was arrested for armed robbery and eventually sentenced to five years in prison.  More incidents followed in 1983, including when defendant was arrested for shooting the owner of a bar as he fled through the rear exit of the bar.  In 1987, defendant reportedly forced a woman to copulate him orally, then kicked and punched her in the face, chest, and back, causing her to sustain a broken nose, broken jawbone, swelling, and bruising.

In June 1990, defendant was arrested after he repeatedly beat his 12-year-old son with a belt while yelling "I'll kill you, I'll kill you!"  In August 1990, police were dispatched to investigate an attempted rape.  The victim told officers that she was with defendant and his wife at their apartment when defendant grabbed her by the neck from behind, knocked her to the ground, struck her several times, and tried to remove her

12

blouse before she fled.  Defendant admitted using force but he and his wife claimed it was to throw the victim out of their home.

Between 1990 and 1997, defendant was involved in multiple incidents—including assault, battery, and domestic violence—resulting in contact with the Hemet Police Department.  In 1992, defendant was convicted of possession of a controlled substance and sentenced to one year in jail.  In December 1993, defendant was convicted of willful infliction of corporal injury of his girlfriend and sentenced to 90 days in jail after he choked her, dragged her around the apartment by her neck, and held a butcher knife to her throat.  During the police investigation, defendant kicked the back window out of the police car and bent the door frame.  In  August 1996, defendant was investigated for harassing two girls on multiple occasions and attempting to lure them into his car.  Finally, in 1998, he was sentenced to an indeterminate life sentence for the instant offense.

*2.  Prison History*

In prison, defendant was cited repeatedly for rules violations between 2000 and 2009.  In 2000, defendant refused to sign for an envelope and punched his cellmate in the mouth.  In 2001, defendant was argumentative and disruptive during class.  Defendant also refused to obey the orders of prison staff and return to his seat until additional staff forced him to comply.  Defendant disobeyed direct orders and later refused to participate in the mandatory standing count.  Defendant was involved in a fight with two other inmates and tried to strike one inmate when he attempted to comply with orders.  The

13

officer used pepper spray against defendant who was uninjured. The other inmate sustained several injuries.

In 2002, defendant disobeyed prison staff's orders and repeatedly appeared outside of a classroom, leering at a female instructor, which made the instructor "uncomfortable and concerned for [her] safety." In 2004, defendant failed to report to his assignment after a yard recall and delayed lockup, later becoming belligerent and argumentative after refusing to participate in a class assignment.

In 2005, defendant disobeyed prison staff when requested to move away from a cell door, telling the prison guard, "Fuck you." "You stupid Motherfucker!" "Quit being a Bitch!" Defendant was disrespectful of the prison staff and cited for growing a beard in violation of grooming standards.

In 2006, he became argumentative and upset when he was told to return to his assigned housing unit. In 2007, defendant insulted an inmate of another race and was threatened by a group of inmates. Defendant was placed in administrative segregation after he was found to present an immediate threat to the safety of himself or others and a danger to institution security.

In 2008, defendant refused to be housed with a known Crip gang member. Defendant refused to follow emergency procedures by entering his assigned class room during an active alarm. In 2009, defendant obstructed the view of his bed with a sheet in violation of the rules, and later refused to stand during a mandatory count.

*3. The Trial Court's Ruling*

At the hearing, the trial court commented that defendant's criminal history was extensive and voluminous, and that he had a continuous string of arrests and convictions until he was sentenced to life in prison in 1998. The court observed there was a common theme of weapons and of violence against women. Many of defendant's arrests were negotiated into lesser convictions for disposition. Defendant's history included "1085ls; 245s; burglaries; auto theft; theft from person; 415s; DUIs; knives; guns; bats; 245 kidnapping charges; 245 rape charges; 211 DUI; 211 245; 415; 148s; both resisting and false ID; 288 arrests; drug arrests; domestic violence arrests . . . [and] there's more with his family, his wife; knives; vandalisms . . . there seems to be a common thread throughout his life that makes him a risk of being dangerous." Additionally, the trial court counted 27 incidents in prison

Defendant argued that he had earned various certificates of achievement while in prison, including an office services program certificate in 2002; a similar certificate in 2003; a typing course certificate in 2003; an office procedures program certificate and a business life industry program certificate in 2004; a word processing course certificate in 2005; a school-to-work program certificate, a math-and-literacy course certificate, and an adult base education program certificate in 2009; a softball league championship award certificate in 2010; a work ethic award in 2011; a certificate of recognition for being an umpire in softball in 2011 and 2012; a literacy class certificate in 2012; an office procedures certificate in 2014; a GED course completion, a computer literacy class, and a

15

Windows Office certificate in 2014. Defendant also cited his medical records, and told the court that he wears a brace on his back and walks with a cane due to "hypertrophic spurring." The trial court noted defendant's condition appeared to be arthritis.

Defendant denied that he had ever beaten his children—except hitting his son using a belt with a metal buckle. Defendant tried to explain his background and his past behavior and how he had changed. Upon release, defendant planned to live with his mother in Inglewood and preferred to enroll in a reentry supervision program. He had focused on computer literacy courses in prison.

The court denied defendant's petition. Defendant contends the trial court abused its discretion by determining that he posed an unreasonable risk of danger to public safety.

*4. Conclusion*

Defendant challenges the court's reliance on some hearsay evidence. However, defendant also admits his 1979 conviction for rape, his 1981 robbery conviction, his 1983 and 1987 convictions for assault, his 1993 domestic violence misdemeanor, and his 1997 conviction for drug possession. Therefore, the trial court did not rely solely upon "mere uncorroborated hearsay" evidence. (*Dyer v Watson* (1953) 121 Cal.App.2d 84, 92.)

Instead, we hold substantial evidence amply supported the trial court's finding of dangerousness. (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998.) The trial court considered defendant's "criminal history, disciplinary record while incarcerated, and . . . other relevant evidence," to determine whether he posed "'an unreasonable risk of danger

16

to public safety.' (§ 1170.126, subd. (f).)" (*People v. Yearwood, supra,* 213 Cal.App.4th at p. 176.) Defendant was a career criminal with a history of predatory and violent behavior and drug use. In prison, he continued to be antisocial, uncooperative, and aggressive. A preponderance of the evidence supported the trial court's finding that he posed an unreasonable risk of danger to public safety. Even accounting for the mitigating factors, the trial court did not act in an arbitrary or capricious manner when it determined that defendant's criminal and prison history outweighed any mitigating evidence and properly exercised its discretion to deny defendant's petition.

*D. The Hearing on Defendant's Petition Under Section 1170.18*

At the section 1170.18 petition hearing on March 12 and 13, 2015, the parties submitted much of the same evidence presented at the December 2014 hearing under section 1170.126. The prosecutor provided evidence of defendant's criminal and prison history, and documents and police reports of various charged and uncharged crimes. Defendant again submitted letters of family support, medical records, and certificates of course completion and recognition.

The victim testified about defendant's 1979 rape offense. She was on her lunch break in a park near where she worked when defendant called her into a women's restroom. He blocked her exit, pulled out a hunting knife, and warned her, "'Don't scream or anything like that, or I'll kill you.'" He removed her clothes and raped her.

Another person testified about a New Year's Eve party in 1983. The witness was the owner of a Los Angeles nightclub. When defendant grabbed the arm of a woman and

17

pulled her away from her dance partner, the two men began yelling and pushing each other. Defendant wielded a small knife. The nightclub owner grabbed his baseball bat and told defendant to get out. They fought until the owner's .45-caliber handgun slipped out of his holster and defendant retrieved it. As the owner fled into the alley, defendant fired the owner's gun twice and struck him in the upper thigh.

Defendant also testified at the hearing that he has a lumbar spine injury requiring pain medicine. Defendant wore a back brace to the hearing and explained that he occasionally needs a wheelchair. Defendant testified that he took computer classes in prison to increase his employment prospects upon release. He disputed the 1979 rape and claimed it was consensual but the victim was angry because he did not pay her.

The trial court explained that it read all of the "voluminous" exhibits before the hearing, including the exhibits from the December 2014 hearing. The court observed that from 1965 until his life sentence in 1998, defendant continued to commit violent crime "except when he was incarcerated." Within a year of defendant being released from incarceration, he harassed two teenage girls, attempting to get them into his car. The court found defendant was not credible when he discussed the rape incident. The court commented that defendant's numerous prison incident reports were "excessive." Defendant also lied about his affiliation with the Bloods gang when he entered prison in 1998. The court observed that the medical evidence did not show defendant was wholly disabled. The court acknowledged the mitigating factors: defendant's age, his mild disability, his computer classes and GED, and the years he has already served for a minor

18

conviction after the appellate court dismissed the underlying violent assault.

The court again recognized that from 1965, when defendant was 14, he continuously committed violent crimes except for when he was incarcerated. His crimes involved "deadly weapons, guns, knives . . . [and] [a]s far as the victims are concerned, they were shot, beaten, raped, psychological injuries, fractures." Even if no conviction resulted, defendant's crimes were "the super strike type of crimes . . . [r]ape, attempted murder, kidnapping, and most involved violence against women. . . ." In prison, he had many incident reports.

The court ruled that releasing defendant would pose an unreasonable risk that he would commit a new violent crime, including a "sexually violent crime, maybe a murder or attempted murder, or a molestation of someone under the age of 18." Because defendant had three prior strikes, he might commit a serious or violent felony offense that would result in a life sentence.

E. *The "Unreasonable Risk of Danger" Standard as Defined in Section 1170.18*

Defendant argues the trial court misinterpreted the meaning of "unreasonable risk of danger," as defined by 1170.18, subdivision (c), by evaluating whether he had the potential to commit an additional serious or violent felony offense, which would result in a life sentence because he is a second strike offender. Defendant also contends the court erroneously believed that the misdemeanor offense of molesting a child under the age of 18 could disqualify him from resentencing.

Defendant has failed to rebut the presumption that the trial court understood the

19

relevant law and appropriately applied it. Contrary to defendant's contentions, the court properly evaluated whether defendant posed an unreasonable risk of danger to public safety. Under section 1170.18, subdivision (c), "unreasonable risk of danger to public safety" means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of section 667, subdivision (e)(2)(C)(iv). (§ 1170.18, subd. (c).) Among other so-called "super strikes," which include several sexually violent or egregious offenses, that subsection includes "[a]ny serious and/or violent felony offense punishable in California by life imprisonment or death." (§ 667, subd. (e)(2)(C)(iv)(VIII).)[2]

Defendant has three strike priors. (*People v. Martin, supra*, 25 Cal.4th at pp. 1183-1184.) Therefore any commission of another serious or violent felony offense would result in a life sentence under the terms of the Three Strikes Law. (§ 667, subd. (e)(2)(A).) For the purposes of section 667, subdivision (e)(2)(C)(iv)(VIII), any serious or violent felony offense committed by a second strike offender would result in a life sentence. Because defendant has three strike priors, the trial court correctly considered the likelihood to reoffend because defendant has three strike priors, and any future serious or violent felony conviction would result in a life sentence.

---

[2] We note that the California Supreme Court has granted a hearing in almost every published appellate case which addresses "dangerousness," beginning with *People v. Valencia* (2014) 232 Cal.App.4th 514, and ending most recently with *People v. Delapena* (2015) 238 Cal.App.4th 1414.

20

Defendant protests that this interpretation would mean that a defendant with two strikes who commits a third felony which is neither violent nor serious would never be able to avail himself of resentencing. However, an inmate's propensity to commit an additional felony that is neither violent nor serious would not be sufficient to disqualify him from resentencing under section 1170.18. Only the inmate's propensity to commit another serious or violent felony as defined by sections 667.5, subdivision (c), and 1192.7, subdivision (c), would be relevant to determining dangerousness under section 1170.18. The likelihood that an inmate with two strike priors would commit any other nonserious or nonviolent felony would be irrelevant to the dangerousness determination under section 1170.18.

Furthermore, defendant misrepresents the trial court's comments when he argues the trial court determined he posed a risk of dangerousness because he may have had a propensity to commit the misdemeanor offense of molesting a child. (§ 647.6, subd. (a)(1).) What the trial court actually said was, even though defendant is "in custody on a minor crime, and he's already served 18 years, that there is an unreasonable risk that he will commit a new violent crime under 1170.18(a) and 667(c) (e) (4) [sic], that is a sexually violent crime, maybe a murder or attempt murder, or a molestation of someone under the age of 18." The court did not mention misdemeanor child molestation.

"The general rule is that a trial court is presumed to have been aware of, and followed the applicable law." (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496, citing *Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 443; Evid. Code, §

21

664.) The reviewing court presumes the trial court's decision is correct. (*Mosley,* at p. 496.) An order is presumed correct and error must be affirmatively shown. (*Ibid*.) The appellate court cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of its discretion. (See *People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1521-1523; *People v. Davis* (1996) 50 Cal.App.4th 168, 170-173.) Here, the record does not establish on its face that the court believed it could deny defendant's petition if it found that defendant had the propensity to commit any misdemeanor. Absent any indication to the contrary, defendant has not rebutted the presumption that the trial court understood and followed the relevant law in determining whether he posed an unreasonable risk of danger to public safety. (*Mosley,* at p. 496.)

Just like with the section 1170.126 petition, the evidence amply supported the trial court's finding that defendant continued to pose an unreasonable risk to public safety. Defendant did not establish he has been rehabilitated. From age 14 in 1965 until his life sentence in 1998, defendant continuously committed violent crimes except for when he was incarcerated. Many of defendant's crimes were serious and violent, "the super strike type of crimes . . . [r]ape, attempted murder, kidnapping, and most involved violence against women, whether it was his wife or women that he picked up off the streets." The numerous prison incidents were "excessive." Defendant still refuses to accept culpability for the 1979 rape conviction.

The trial court's determination was hardly so irrational or arbitrary that no reasonable person could agree with it. Defendant exhibited little remorse and accepted

22

no responsibility for his crimes.  Considering all the evidence of defendant's violent criminal history, his lengthy disciplinary history in prison, and his failure to accept culpability, the trial court unquestionably properly exercised its discretion to deny defendant's section 1170.18 petition.  Even without considering defendant's propensity to commit serious or violent felony offenses, the evidence presented at the petition hearing overwhelmingly demonstrated that he posed an unreasonable risk of danger to public safety within the meaning of section 1170.18.

IV

DISPOSTIION

The trial court did not abuse its discretion in denying defendant's section 1170.126 and 1170.18 petitions.  It properly analyzed defendant's potential for dangerousness.

We affirm the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

McKINSTER
J.